## Key v. Duffin.

(Decided May 1, 1917.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

1. Evidence—Privileged Communication—Offer to Compromise.—A letter which is an offer to compromise an existing or threatened controversy is a privileged communication and not admissible in evidence against the one making the offer, unless it contains an admission of fact pertinent to the issue, in which event so much thereof as contains the admission is competent.

2. Evidence.—Letter examined and held not to be admissible under the above rule.

3. Evidence—Memorandum—Inadmissibility of.—A written memorandum of an alleged verbal contract of sale was made by a witness shortly after the contract was alleged to have been made, but not in the presence of the parties or in the regular course of business. The witness who made the memorandum was present at the trial and testified positively and explicitly concerning

all that was said and done by the parties at the time, without reference to the memorandum to refresh his memory. Held, that the testimony of the witness was the best evidence and the memorandum was not admissible as evidence.

4. Evidence—Party Testifying for Himself.—Subsection 3 of section 606 of the Civil Code, which prohibits a party from testifying for himself, in chief, after introducing other testimony for himself, in chief, has no application to testimony in rebuttal, and it was error for the trial court not to permit the plaintiff to testify for himself, in rebuttal, after having introduced other testimony, in rebuttal.

5. Damages—Action Against President of Corporation for Breach of Contract—Instructions.—The defendant, the president of a corporation, was sued individually for the alleged breach of a contract of sale of the corporate stock. There was evidence in the case concerning agreements of the corporation to buy the stock of different persons, and of a suggestion by defendant to the board of directors concerning the purchase, by the corporation, of certain of plaintiff's stock. The court, in instructing the jury, told them that if they believed that plaintiff sold to the defendant, "in his individual capacity," certain shares, etc.: Held, that this was not error, since its only effect was to emphasize to the jury the real issue, and prevent possible confusion. from reference in the evidence to the insurance company of which defendant was president.

ED. C. O'REAR and B. G. WILLIAMS for appellants.

HELM BRUCE, JOHN B. BASKIN, O'DOHERTY & YONTS and BRUCE & BULLITT for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Appellant brought this action in the Jefferson circuit court, to recover of appellee damages for the breach of an alleged verbal contract of sale of twelve hundred shares of the capital stock of the Citizens National Life Insurance Company. Appellee denied the execution of the contract, and, upon trial before a jury, a verdict was rendered for appellee, upon which judgment was entered dismissing the petition.

Appellant's motion for a new trial having been overruled, he is prosecuting this appeal and relies, for reversal, upon the following grounds: That the court erred, first, in refusing to admit as evidence, a letter, of date April 24th, 1915, written by appellee to appellant; second, in refusing to admit as evidence upon his behalf, a written memorandum of the alleged contract of sale, made by a witness shortly thereafter, but not in

the presence of appellee; third, in refusing to permit appellant to testify in rebuttal after having introduced other witnesses in rebuttal; and, fourth, in one of the instructions given.

1. The rejected letter is as follows:

"Louisville, Ky., April 24th, 1915.

"L. W. Key, Esq.,
            Mayfield, Kentucky.

"Dear Sir:—I now find that I am going to be more than busy on the 27th, 28th, and 29th, and am satisfied we will have to try to make some settlement with you by correspondence anyhow. With the suit pending and the practical prohibition that we are here attempting with you, viz.: Settle for stock on a basis decidedly higher than it is actually worth, I really make no settlement whatever until the final disposition of that suit. My first impression was to write you that I would have nothing whatever to do with the settlement until that suit was disposed of. I have told you frankly and fully how I hoped to dispose of the matter in connection with the suit, but notwithstanding the fact that you have waited for years to save yourself from partial loss on this matter, you are now exceedingly anxious to have some very prompt settlement with me.

"I therefore make you the following proposition, from which I will not deviate at all:

"First. You want $30,000.00 for 1,500 shares of Citizens National Life stock, or $20.00 per share. Now I will not agree to bind the company, nor myself personally, to pay any such price for the stock, but in consideration of all that you and Mr. W. B. Stanfield have done and for the purpose of making a proper consideration, I would suggest the following:

"Second. I hold your note for $7,500.00 upon which I am endorser for your accommodation and practically in connection with this transaction. You are also endorser on this note. This note will have to be settled finally in connection with this transaction because it was started in connection with it. I, therefore, trust you will note my plan suggested herein of the final disposition of this note.

"Third. I will pay you $2,500.00 in cash now, which, together with the disposition of the foregoing note, makes $10,000.00.

"Fourth. I will make one note for $10,000.00 due in two years from date, and one note for $10,000.00 due in three years from date, each to draw 5% interest from and after date, which shall not be later than June 1st, 1915, and both notes to be secured by the 1,500 shares of Citizens National Life Insurance Company stock after it has been reduced 30% and duly transferred into Inter-Southern Life Insurance Company or 5,200 shares of Inter-Southern Life Insurance Company stock of the par value of $1.00 per share. On the two-year note, there is to be 3,000 shares attached as collateral and on the three-year note, there is to be attached 2,200 shares as collateral. Both notes are to become due on or before the due date and any 'payment made on either note shall be made with the understanding that at the time the payments are made, the *pro rata* part of the collateral is to be delivered and payments are likewise to be made on or before the due date, and collateral delivered as payments are made. Interest is to be paid annually. Dividends, if any, paid on the stock attached to the notes as collateral, are to be applied to the interest and principal.'

"For the purpose of effectually carrying out this entire matter, W. B. Stanfield is to act as escrow holder or trustee for both parties concerned, and all of the notes and all of the stock are to be delivered and held by him in escrow. He is to be permitted, however, to make such contract as he may deem proper to satisfy your creditors about this escrow holding with the understanding that such contracts are made by him for the purpose of facilitating the payment of your indebtedness and without any responsibility attaching to any of the parties to either of these contracts by reason thereof.

"Fifth. The $7,500.00 note mentioned in the first paragraph of this letter is to be signed by all of the parties now endorsing and be renewed and carried here from time to time by me in one of the banks or trust companies in this city, with the understanding that when I pay said $7,500.00 note, you are to be released thereon as endorser, and if the Water Works Company is finally unable to pay same, that the collateral attached to said $7,500.00 note is to be delivered to me when I pay the note.

"Finally, realizing that there is nothing gained by having controversies about these matters, I have con-

cluded to undertake this sort of settlement of the entire matter with you, regardless of the present existing law suit, and an injunction pending against such settlement. Kindly go over this with Mr. Stanfield and let me hear from you. All of the foregoing is written for the sole purpose of trying to compromise and settle this matter to your satisfaction and without in any way binding any of the parties or myself in admitting any liability whatever.

"Yours very truly,
(Signed)  "JAMES R. DUFFIN."

Counsel are agreed as to the law affecting the admissibility of this letter, viz.: That a letter which is an offer to compromise an existing or threatened controversy, is a privileged communication and not admissible, unless, however, it contains an admission of fact pertinent to the inquiry, in which event the letter, or so much thereof, at least, as contains the admission, is competent. Church v. Steele's Heirs, 1 Marsh. 328; Evans v. Smith, 5 Mon. 363, 17 Am. Dec. 74; I. C. R. Co. v. Manion, 113 Ky. 7; I. C. R. Co. v. Nelson, 127 S. W. 520; Wigmore on Evidence, section 1061.

Agreed as to the law, counsel disagree as to whether or not the letter contains admissions of fact. It is insisted for appellant that the letter admits that there was a settlement to be made, at some time, with Key for the stock, on a basis decidedly higher than it was worth; that the writer was the one bound to make that settlement; and that the offer of settlement, being a substantial compliance with the alleged contract, is an admission of its terms; but a reading of the letter fails to disclose any such admission, except inferentially, such as is always the case in every offer of compromise, and this fact is recognized by counsel for appellant, by his argument that a fact admitted inferentially, but not explicitly and unequivocally, is none the less an admission of fact. If this argument were sustained, no offer of compromise could ever be held to be privileged, because it would always be argued that any offer to compromise was inferentially an admission that some settlement was due to the adverse party upon the subject of the controversy, and that the person making the offer was the party bound to make that settlement, else he would not have made the offer and, in so far as the offer contained terms identical with those contended for, it would

be claimed it was an admission of the contention of the one to whom the offer was made. If such use could be made of an offer to compromise, no one in a controversy would ever dare to make such an offer, and it was to defeat this use of the offer, against the one making it, when the effort to compromise had failed and litigation had resulted, as well as to promote, rather than discourage, compromise without litigation, that the rule was adopted making such communications privileged.

The letter in question does not make any admission of fact, but, upon the other hand, expressly denies all liability upon the part of the writer. It was, therefore, clearly incompetent, and the court did not err in its exclusion.

2. The offered memorandum of the alleged contract was written out by Mr. Stanfield, a witness for appellant, upon the same day, and shortly after the contract was alleged to have been made, but after appellant and the witness had left the presence of appellee. Mr. Stanfield, who made the memorandum, was introduced as a witness for appellant, and testified positively and explicitly about all that was said and done by both appellant and appellee when it is alleged the contract was made, without referring to the memorandum to refresh his memory of the transaction and without suggestion of the necessity of a reference thereto. After having thus testified, the offer was made to introduce the memorandum, which was not allowed to be done.

This memorandum, unquestionably, was not made in the regular course of business, so as to render it admissible upon that ground. It is, also, unquestionably, secondary evidence, which is, of course, admissible only in the absence of the best evidence; as it is a fundamental rule that the best evidence must always be produced, and we know of no rule of evidence that, under the circumstances here, would render the memorandum competent. The rule is thus stated in 10 R. C. L. 909:

"The theory of the law deducible from the books seems to be that a memorandum is but secondary evidence of the facts of which it speaks, the primary evidence being the knowledge of the witness, if he is able to testify truly as to the facts mentioned, or if he is enabled to testify from present recollection after having his mind quickened by the memorandum—that is to say, of his own knowledge, independent of the memor-

andum; and it is only when this primary proof is not available that resort may be had to the secondary, so that it becomes necessary to show that the witness can not speak from knowledge of the facts, or from present recollection thereof, after having consulted the memorandum, before it can become of evidentiary value, either as auxiliary or as an aid to the mind speaking from it. If it appears that the memorandum was made in the usual course of business, it may be introduced and received in evidence along with the testimony of the witness who made it, and who is enabled to say that the facts stated in it were correctly minuted at the time. Memoranda made in the usual course of business, when made up from reports of subordinates, are admissible, under the rule, when accompanied by the testimony of such subordinates that they represent truly what had transpired, combined with that of the person minuting the transactions that they were also truly noted; but not so with purely private memoranda, not made in the pursuance of any duty owed by the person making them.''

The precise question before us now was considered by the Supreme Court of the United States, in Vicksburg, etc. Railroad v. O'Brien, 119 U. S. 99, in an opinion by Mr. Justice Harlan. That was a personal injury case, and the doctor who had examined the injured party and made a written memorandum, within thirty minutes after the accident happened, of the exact physical condition in which he found the injured party, was called as a witness and testified as to the party's physical condition at the time he made the examination, that he made the memorandum and that it was correct. The memorandum was then offered and admitted in evidence, over objection. In holding that this was error, the court said:

''We are of opinion that this ruling cannot be sustained upon any principle recognized in the law of evidence. The authorities are uniform in holding that a witness is at liberty to examine a memorandum prepared by him, under the circumstances in which this one was, for the purpose of refreshing or assisting his recollection as to the facts stated in it.

''But there are adjudged cases which declare that, unless prepared in the discharge of some public duty, or of some duty arising out of the business relations of the witness with others, or in the regular course of his

own business, or with the knowledge and concurrence of the party to be charged, and for the purpose of charging him, such a memorandum cannot, under any circumstances, be admitted as an instrument of evidence. There are, however, other cases to the effect, that, where the witness states, under oath, that the memorandum made by him presently after the transaction to which it relates, for the purpose of perpetuating his recollection of the facts, and that he knows it was correct when prepared, although after reading it he cannot recall the circumstances so as to state them alone from memory, the paper may be received as the best evidence of which the case admits.

"The present case does not require us to enter upon an examination of the numerous authorities upon this general subject; for, it does not appear here, but that at the time the witness testified he had, without even looking at his written statement, a clear, distinct recollection of every essential fact stated in it. If he had such present recollection, there was no necessity whatever for reading that paper to the jury. Applying, then, to the case the most liberal rule announced in any of the authorities, the ruling by which the plaintiffs were allowed to read the physician's written statement to the jury as evidence, in itself, of the facts therein recited, was erroneous."

This court recognized the same rule of evidence when, in L. & N. R. Co. v. Raymond's Admr, 135 Ky. 738, 123 S. W. 281, a doctor's certificate stating the cause of the plaintiff's death was not admitted in evidence, although the certificate was made at the time of the accident, and in compliance with the statutory law, the court saying:

"The law requires the best evidence, and the best evidence is the testimony of Doctor Roberts, if living."

We would not have deemed it necessary to cite authority in support of this thoroughly established rule of evidence, were it not for the fact that learned counsel for appellant has cited, in support of a contrary view, Wigmore on Evidence, vol. 1, sec. 738, which does advance an argument in support of a preference for the written memorandum over the testimony of the witness who made it. Neither Mr. Wigmore nor counsel for appellant cites any authority in support of that text, nor have we been able to find any such authority,

and we are unable to indorse it. We are, therefore, clearly of the opinion that the trial court did not err in the rejection of the memorandum as evidence.

3. After the completion of the testimony in chief for both sides, appellant introduced, in rebuttal, two witnesses, and then attempted to introduce himself as a witness in rebuttal. This the court refused to permit, which was clearly error, since the rule requiring the introduction of a party, as a witness in his own behalf, before introducing other witnesses, as provided by sub-sec. 3 of sec. 606 of the Civil Code, is limited, by its terms, to the introduction of evidence in chief, and has no application whatever to the introduction of evidence in rebuttal; nor can the ruling be sustained as is attempted upon the ground of the existence of a rule of the particular trial court to that effect. While the trial court has large discretion in the control and direction of the introduction of evidence, by orders in the particular case, of which all parties must take notice, we know of no authority that would require a party, or his counsel, to take notice of the usual practice or a rule of the particular court in the method of the introduction of witnesses, and that such presumptive or actual notice of such a rule of practice, even though, in itself, unobjectionable, would be necessary, before an observance could be insisted upon, is self-evident, otherwise non-resident attorneys and their clients would be at a decided disadvantage and constantly in danger of forfeiting the right to use material evidence because of non-familiarity with local customs and rules.

Although it was error not to permit appellant to testify in rebuttal, the error was not prejudicial, since the evidence he sought to give, heard by the court out of the presence of the jury and transcribed by the stenographer, was wholly immaterial. It relates only to a personal difficulty which occurred between appellant and appellee more than two months after the contract is alleged to have been made. Since the error was not prejudicial, the judgment will not be reversed because thereof.

4. The only objection to the instructions given is that the court used the words "in his individual capacity," after the name of the defendant, the instruction reading:

"If you believe from the evidence that, on January 21st, 1915, the plaintiff, L. W. Key, sold to the defendant, James R. Duffin, in his individual capacity, 1,200 shares of the capital stock of the Citizens National Life Insurance Company, etc."

There had been more or less testimony in the case, about an agreement by the Inter-Southern Life Insurance Company, of which Duffin was president, to buy stock of different persons, and Duffin had testified about suggestions he had made to Key, of placing before the board of directors of that company the question of buying certain shares of Key's stock. The court evidently used the words to make it perfectly clear to the minds of the jury, that the liability asserted, the issue they were trying, was against Duffin individually, and not as an officer of the insurance company. We can see no objection to the use of these words in the instruction, for, if of any effect whatever, they could have served only to emphasize to the jury the real issue, and to avoid any possible confusion from references in the evidence to the insurance company of which Duffin was president.

Failing to find any substantial error in the record, the judgment is affirmed.

Judge Thomas not sitting.