## MEINHARD v. YOUNGBLOOD.

1. CASES CRITICISED—RES JUDICATA.—The jurisdiction of the court over the persons of the defendants in this case, and the right of plaintiffs, suing as simple contract creditors for themselves and other creditors, to attack the attachment proceedings as void under the assignment law, were affirmatively decided on a former appeal, reported as Meinhard Bros. *v.* Youngblood, in 37 S. C., 235, 237.

2. INJUNCTION—APPEALS.—Judgments obtained by default under attachment proceedings, pending an appeal from a decree which vacated an injunction enjoining the sheriff from paying over to the attachment creditors the proceeds of sale of the attached property, become as nullities to this property when such Circuit decree is reversed on appeal.

3. CASES CRITICISED.—There was nothing in the decisions of this court in Meinhard *v.* Youngblood, 37 S. C., 223, and Meinhard Bros. *v.* Youngblood, *Ibid.*, 231, which prevented the plaintiffs from attacking the attachment proceedings between the defendants as illegal preferences under the assignment law.

4. EVIDENCE—ATTORNEY—RES GESTÆ.—Under the latitude allowed in receiving testimony as to fraud, declarations of the attorney of the attachment debtor, made at the time that the attachments were being taken out, and in reference thereto, are admissible, to show collusion between such debtor and his attaching creditors.

5. CASES CRITICISED—ATTACHMENTS—FRAUDS.—Under the decisions in the former appeals in this case, plaintiffs were permitted to attack the attachment proceedings between the defendants, either as fraudulent under the Statute of Elizabeth, or as void under the attachment laws, or on both grounds. And this court sustained the finding of the Circuit Court, that there was collusion in the matter between the creditors and debtor with intent to defraud other creditors, and that the attachments were, therefore, void.

6. ATTACHMENTS—ASSIGNMENTS.—Where a debtor, in collusion with some of his creditors, permits all of his property to be attached, with a view to giving such creditors a preference over other creditors, the attachment will be held to be an assignment with preferences, and will be vacated.

Before IZLAR, J., Abbeville, January, 1893.

In this case there were two former appeals, one reported as Meinhard *v.* Youngblood, in 37 S. C., 223, and the other as Meinhard Bros. *v.* Youngblood, in 37 S. C., 231. This appeal will be better understood by reading the opinion of the court on those two appeals. The decree of the Circuit Judge from which this appeal was taken, after a statement of the two former appeals, was as follows:

The cause came back to be heard on its merits at the January Term of the Circuit Court, 1893, at Abbeville, when it was well and elaborately argued by both sides before me. Upon the call of the case, on motion of the attachment creditors, and under the act of 1890, relating to the referring of issues out of Chancery, the following issue of fact was submitted to a jury, viz: "Did the defendants, Witz, Biedler & Co. and Hurst, Purnell & Co., in procuring the attachments to be issued against their codefendant, J. T. Youngblood, act in collusion with the said J. T. Youngblood for the purpose of defrauding the other creditors of the said J. T. Youngblood?" To this question, after hearing all the evidence, and the able arguments of zealous counsel on both sides, the jury answered, "Yes." A motion for a new trial on the minutes of the court was made by the said defendants, which I refused in a formal order. The cause was then heard by me upon the issues involved; and I now proceed to decide the same.

It is contended for the defendants that the question of preference or priority under our assignment law, if there ever was any, made in the complaint, has been eliminated by the decree of Judge Witherspoon dismissing the complaint, and the decision of the Supreme Court overruling the same; and that the sole question now is, was there actual fraud between Youngblood and Witz, Biedler & Co. and Hurst, Purnell & Co., in procuring the attachments to be issued. In other words, that

the plaintiffs can not seek their remedy under our assignment law, but are limited to their remedy, if any exist, under the Statute of Elizabeth. To this view I cannot assent. Judge Witherspoon says, at the close of his decree: "The mere non-action of the debtor is not sufficient. It is not alleged in the complaint that the defendant, J. T. Youngblood, procured his property to be attached, and I conclude that the allegations in the eleventh (11) paragraph of the complaint are too indefinite, and that the complaint does not state facts sufficient to constitute a cause of action under the Assignment Act of 1882." Then he adds, "It is, therefore, ordered and adjudged, that the demurrer be sustained on the second ground as above stated, and that the complaint be dismissed with costs." From this decision the plaintiffs appealed, and their appeal was sustained. The decree of Judge Witherspoon was reversed; and I cannot hold that any part of the complaint has been eliminated.

It appears to me, and I so hold, that the complaint comes back from the Supreme Court intact, with not one of its allegations or causes of action eliminated, and that the cause is now heard for the first time on its merits. In the decision of the Supreme Court, 37 S. C., 231, Mr. Justice Pope says: "The complaint may be regarded as seeking relief on two legal grounds: (1) An invasion of plaintiffs' rights by the attachments operating as an assignment under section 2015" (a misprint for 2014) "of the General Statutes. (2) Because a fraud permeated and rendered nugatory all such proceedings in attachment." And again, in the second appeal, Mr. Justice Pope says, 37 S. C., 237: "Why should the plaintiffs narrow their line of attack? They allege a fraudulent collusion between certain parties, whereby their right of property is invaded. At least two remedies exist in law to give them relief, if they can prove their charges. Why should it be said that they take one remedy to the exclusion of the other? * * * What was passed upon by the Circuit Judge but the insufficioncy of the allegations of the complaint to support a cause of action?"

The decision of the Supreme Court in these two appeals are to be construed together; and the "two remedies" spoken of in

the second appeal as existing in law, must be understood to refer to the two legal grounds of relief spoken of in the first appeal, viz: (1) under the assignment act; and (2) because of fraud. As I understand the opinion of the court in the second appeal, the only point decided in regard to the complaint was, whether it stated facts sufficient to constitute a cause of action. The court certainly did not say that the complaint did not state a cause of action under section 2014 of the General Statutes. But it did say that the complaint stated facts sufficient to constitute a cause of action. Controlled by the decision of the Supreme Court, in which I may be permitted to concur, I hold that the question of preference or priority under the act of assignment is not eliminated.

It is contended by the counsel for the defendants, that a debtor has the right to give a *bona fide* security for a past debt; and that a creditor has the right to obtain a preference by attachment. Generally speaking, these are sound propositions; but they would not apply to a case where an insolvent debtor, in giving the *bona fide* security, did so for the purpose of giving a preference or priority at the expense of other creditors; nor to a case in which the insolvent debtor, by collusion with certain creditors, submitted to be attached by them for the purpose of defrauding his other creditors. It is contended further, that a debtor must do something himself before the preference given can be held illegal; that mere non-action on his part is not sufficient. This also is true, speaking generally, and yet cases may arise in which the doing nothing by the debtor was to be the debtor's part in the collusion charged; as, for instance, his refraining from moving to set attachment aside, and his refusal to move. Silence may be as eloquent as speech; and doing nothing may be of all action the most effective.

From the view I take of this case, and of the issue presented to the jury, I am compelled to hold that the procuring of the attachment by collusion between the attachment debtor and the attachment creditors was an attempt to give said creditors a preference or priority over the other creditors, by so transferring the debtor's property as to exclude the other creditors, and leave nothing to meet their claims; and that as such it

was in violation of section 2014 of the General Statutes, in that although in form and name it was an attachment, in reality and in effect it was an assignment. Since the passage of our assignment law in 1882, our courts have been made acquainted with many and various efforts to evade its provisions. The transfers of property have taken the form of mortgages, conveyances, bills of sale, confessions of judgment. But whenever the court has been satisfied that the transfer of the insolvent debtor's property was in effect an assignment for the benefit of certain creditors, to the exclusion of the other creditors, it has not hesitated to set it aside, no matter by what name it might be called. This is the first case, so far as I am aware, in which the attempt has assumed the guise of an attachment, and, I may add, it is, of all forms of evasion yet attempted, the most difficult to expose and set aside. It is hardly necessary to refer at length to the numerous decisions on the subject of assignments; and I shall mention only a few of the leading cases, so as to present the issues involved in this case in a clear light. [Here the judge cited and quoted at length from *Austin* v. *Nichols*, 23 S. C., 405; *Wilks* v. *Walker*, 22 *Id.*, 108; *Lamar* v. *Pool*, 26 *Id.*, 441; *Meinhard* v. *Strickland*, 29 *Id.*, 441; *McGovern* v. *Richard*, 27 *Id.*, 272; *Putney* v. *Friesleben*, 32 *Id.*, 492; and *White* v. *Colthausen*, 129 U. S., 330.]

In the case before me, the debtor, Youngblood, executed no mortgage nor deed of conveyance to the creditors, his codefendants, nor did he give them a bill of sale nor confession of judgment. But the evidence shows that he submitted to be attached by them under two writs, whereby his whole property was forthwith and most effectually transferred to them, to the complete exclusion of his other creditors. In *Putney* v. *Friesleben*, the debtor, in confessing judgment, "authorized judgment to be entered against him and execution to be issued forthwith." By the summary process of attachment Youngblood made a transfer of his property to the attachment creditors certainly as speedy and as thorough. The attachment creditors knew he was insolvent, and that there were other creditors. Youngblood not only took no steps to set the attachments aside, but he refused to do so when assured that they could be set aside, and without

expense to him.   The jury found that the attachment creditors acted in collusion with the debtor, Youngblood, in procuring the attachments; and I am clearly of opinion that throughout the whole transaction the intention of the parties was by way of attachment to secure to the attachment creditors a preference or priority over the other creditors.   The attachments must, therefore, be set aside as being a violation of the assignment law.

But even if the plaintiffs could not seek their remedy under the assignment law, they are certainly entitled to it under the Statute of Elizabeth.   That they have stated a good cause of action under the Statute of Elizabeth, has, it seems to me, been decided by the Supreme Court, when Mr. Justice Pope, as already quoted, says that the plaintiffs "allege a fraudulent collusion between certain parties whereby their right of property is invaded," and then concludes that where this is the case, "at least two remedies exist in law to give them relief, if they can prove their charges."   What two remedies are referred to? They certainly are one under the assignment act and one under the Statute of Elizabeth.   This Mr. Justice Pope had already in effect said in the first appeal, in a passage quoted above, beginning, "the complaint may be regarded as seeking relief on two legal grounds," (1) under the assignment act, and (2) because of fraud."   In the second appeal the court says, that "If by reason of superior diligence a *bona fide* advantage is obtained by one of such creditors over the remaining creditors, so that his claim on such debtor's property is preferred in payment over the others, that advantage is sustained by law.   But if, in obtaining such advantage by one creditor over the balance, there is any collusion, unfair means, or fraud between the creditors and the debtor, the law very wisely upsets such unfairness."   37 S. C., 237.

The jury have found in this case that the attachment creditors, in procuring the attachments to be issued against the attachment debtor, Youngblood, acted in collusion with him for the purpose of defrauding his other creditors.   When the Supreme Court has laid down the law, and the jury has found the fact, it is easy to come to a conclusion, especially since I agree with the jury in their finding of fact.   The transaction from

first to last, as it was developed by the evidence adduced, satisfies me that it was a scheme of fraud, very subtly planned, by which Witz, Biedler & Co. and Hurst, Purnell & Co., acting in collusion with their debtor, Youngblood, endeavored, not by superior diligence, but by unfair means and deception, to obtain an advantage over the other creditors. Such being the case, a Court of Equity is bound to condemn the transaction and upset it as fraudulent. On the question of fraud, the finding of the jury was based upon evidence more than sufficient to justify it. This will fully appear when all the facts and circumstances, as disclosed by the evidence, are considered and carefully weighed.

Without going into all the particulars, I may say that the testimony of the witness Smith, the authorized agent of the defendant, Witz, Biedler & Co., is of itself sufficient to satisfy a Court of Equity of the fraudulent intent of the parties. It is evident from his testimony, that he and Mr. Cumming, the authorized agent of Hurst, Purnell & Co., when they met at Greenwood two or three days before the 3d January, agreed to gain an advantage over the other creditors by deceiving them. In the language of Smith, they agreed "to pool their issues and divide the recovery." Smith admitted that in his opinion the suing out an attachment was a "question of nerve," and that a very slight clue was enough for him to proceed with attachment process. He made it plain to me that he and Cumming determined to attach, not because of fraud, but for the purpose of evading the assignment act. His testimony, and the flimsy nature of the affidavits in attachment, convince me that he and Cumming did not sue out the writs because of their charges of fraud, but that they made up their charges of fraud for the purpose of suing out the writs. There is no proof that Youngblood was to profit by this transaction; from the nature of the case, evidence of this would be hard for the plaintiffs to find. But believing with the jury, that he acted in collusion with the attachment creditors in submitting to attachment, and in refusing to be relieved of the charge of fraud, whatever the unknown advantage to him might be, I hold, in the language of the Supreme Court, that "a fraud permeated and rendered

nugatory all such proceedings in attachment," and that consequently the plaintiffs are entitled to relief under the Statute of Elizabeth.

It is urged, however, by defendants' counsel, that whether these attachments are set aside or no, the funds now under the control of the court, arising out of the sale of the debtor's property by virtue of the institution of this suit, must be applied to the claim of the attachment creditors, because their claims, it is argued, have been reduced to judgment. It appears that after Judge Witherspoon had dismissed the complaint, and pending the appeal from his decision, the attachment creditors, as plaintiffs in the attachment suits, moved for judgment against Youngblood, who had not answered the complaints in attachment. This was at the October Term, 1891, before Judge Kershaw, who granted judgment by default in favor of the plaintiffs in attachment, in the respective sums of $2,994.36 and $1,765.73 and costs. The plaintiffs herein were, of course, not parties to these suits, but they protested by their counsel, on the ground that their appeal from Judge Witherspoon's decree was still pending.

The case of *Claflin* v. *Iseman*, 23 S. C., 416, is cited by the counsel for the attachment creditors in favor of their default judgments. But that case, as I understand it, is wholly unlike this. Claflin obtained a judgment where no injunction had been granted; and after the assignment was set aside (and that, moreover, not for actual fraud), the court held as a matter of course that the Claflin judgment should be paid in full. Theirs, too, was not a creditor's bill. But here an injunction had been granted, an appeal was pending, proceedings to set aside the attachments for fraud had been instituted, and were not ended, and the complaint was in the nature of a creditor's bill; under these circumstances it would be strange if the judgments by default should be regarded as valid. It would be extraordinary in a Court of Equity to permit the attachment creditors to get possession of the entire proceeds of Youngblood's property, now held in the hand of the court for the purpose of protecting other creditors, and this, too, after the court has decided that the attachments were made use of in an attempt to evade the

assignment law, and after a jury has found that the attachment creditors had acted in collusion with the debtor for the purpose of defrauding the other creditors. The court took charge of the property so attached, and will not suffer it to be subjected to the judgments of the attachment creditors, even supposing such judgments now exist, which I do not think is the case. To subject this property now to the payment of these judgments, even if valid, would be to give to these creditors the profits of their corrupt enterprise, notwithstanding the fraud which permeated all the proceedings in attachment has been detected and clearly exposed. This would be to encourage fraud, rather than to restrain fraud. To this end the Court of Equity will never lend its aid.

It might have been better to have refused the orders for judgment pending the appeal from Judge Witherspoon's decree, although the dismissal of the complaint may have dissolved the injunction. But my view of the law is, that when Witz, Biedler & Co. and Hurst, Purnell & Co. moved for judgment pending the appeal, they did so in the face of the fact that, if the appeal were sustained, the injunction would be restored in full force and the parties placed in the position they occupied before the complaint was dismissed. The judgments obtained *ad interim* are nullities, and as such can have no preference. If this were not so, the fruit of successful litigation would be unavailable for the sole purpose for which the injunction was originally granted. "Where a complaint in an action is dismissed, and judgment entered, a temporary injunction in the action falls with it, and can only be restored by a reversal of the judgment in the appellate court." 2 Wait Prac., 121, citing cases. I do not see how I could, under any circumstances, order the funds to be applied to the claims of the attachment creditors, whether they have judgments or no. This I say, because I think that the funds now in the hands of the court are there by virtue of this very suit, and for the purpose of equitable distribution among such creditors as may come in and share the expenses of this action.

In view of the foregoing, I find, &c. [as fully quoted in the opinion of this court.]

From this decree the defendant creditors appealed.

*Messrs. Graydon & Graydon* and *Melton & Melton,* for appellants.

*Messrs. Benet & Cason,* contra.

April 21, 1894.    The opinion of the court was delivered by

MR. JUSTICE MCGOWAN.    This action was originally brought in 1891, for the purpose of setting aside two writs of attachment levied upon the property of the defendant, J. T. Youngblood, by his codefendants, Witz, Biedler & Co. and Hurst, Purnell & Co., two of his creditors.    The complaint, in substance, alleged that Youngblood was indebted to the plaintiffs by two notes, respectively, for $944.35 and $1,144.25; that Youngblood was largely insolvent; that the defendants, Witz, Biedler & Co. and Hurst, Purnell & Co., had issued two writs of attachments, which were levied by Sheriff Mann upon all the property of Youngblood on January 5, 1891; that the issuing of said attachments, and the levy upon all the property of Youngblood, was an attempt to give a preference to the said Witz, Biedler & Co. and Hurst, Purnell & Co. over the other creditors; and that said transaction was "collusive, and a fraud upon the rights of other creditors of said Youngblood."    And for relief, the plaintiffs prayed: (1) That the defendants and all other creditors be enjoined from prosecuting or commencing suit against Youngblood.  (2) That Sheriff Mann, who held the property under the attachment proceedings, be enjoined from selling or disposing of, or interfering with, said property.   (3) That a receiver be appointed to take charge of said property, and hold it subject to the order of the court.    And (4) that the attachments be set aside and declared null and void, and for other relief, &c.

Upon some preliminary questions, the case came to the Supreme Court.    But after these points were settled here, the cause was sent back to the Circuit, to be heard on its merits (see 37 S. C., 223 and 231), and in January, 1893, was fully heard by his honor, Judge Izlar, who states that upon the call of the case, on motion of the attaching creditors, and under the

21—41

act of 1890, relating to the referring of issues out of chancery,
the following issue of fact was submitted to a jury, viz: "Did
the defendants, Witz, Biedler & Co. and Hurst, Purnell & Co.,
in procuring the attachments to be issued against their code-
fendant, J. T. Youngblood, act in collusion with the said
Youngblood, for the purpose of defrauding the other creditors
of the said J. T. Youngblood?" "To this question, after hear-
ing all the evidence, and the able argument of zealous counsel
on both sides, the jury answered 'Yes.' A motion for a new
trial on the minutes of the court was made by the said defend-
ants, which I refused in a formal order. The case was then
heard by me upon the issues involved, and I now proceed to
decide the same."

After a very full consideration of the whole subject, his
honor, Judge Izlar, rendered an exhaustive decree, which we
hope will appear in full in the report of the case, as no argu-
ment that we could make would add to its fullness or clearness.
He held that the procurement of the attachments by collusion
between the debtor and the attaching creditors was a fraud
upon the other creditors, and a violation of the assignment act,
and thus concluded: "In view of the foregoing, I find: (1)
That J. T. Youngblood, at the time of the attachments of Witz,
Biedler & Co. and Hurst, Purnell & Co. were issued and levied
upon his property, was insolvent to a large amount. (2) That
the defendants, Witz, Biedler & Co. and Hurst, Purnell & Co.,
in procuring the attachments to be issued, acted in collusion
with their codefendant, J. T. Youngblood, for the purpose of
defrauding the other creditors of the said Youngblood. (3)
That in acting in collusion with the said attachment creditors
in the issuing of said attachments, the said J. T. Youngblood
transferred all his property to them for the purpose of giving
them a preference or priority as creditors over his other cred-
itors. It is, therefore, ordered, adjudged, and decreed, that the
aforesaid writs of attachment, issued as aforesaid, be, and the
same are hereby, set aside, and declared null and void, and
the clerk of the court is hereby directed so to mark the same.
It is further ordered, that the injunction heretofore granted
herein be continued, and that the funds now in the hands of

the sheriff, under the order of the court, made in this cause, be held by him subject to the former order of the court. It is further ordered, that the master of said county do forthwith publish for thirty (30) days, in one of the papers of the said county, a notice requiring all creditors of the said J. T. Youngblood, who are willing to contribute their share of the expenses of this suit, to present and prove their claims before him within the said time, to wit: thirty days, or be thereafter barred; such creditors to sign an agreement in writing that they will pay their proper proportion of such expenses. It is further ordered, that the master report at the next term of the court all claims thus presented and proved before him, and the amount thereof; and that he also report the amount of the funds now in the hands of the sheriff, subject to the order of the court in this cause."

From this decree the defendants, Witz, Biedler & Co. and Hurst, Purnell & Co., appeal to this court upon some thirty grounds. We think, however, this large number can be reduced by a classification which shall include all the issues that were actually raised. In so classifying them, we shall follow somewhat the arrangement adopted by appellant's counsel in their argument.

Exception 30 raises the question of jurisdiction of the persons of the appellants. It is proper to dispose of this at the outset. It appears that this very issue was raised and passed upon in one of the former appeals in this case. See 37 S. C., 235-6. It is only necessary to refer to our former decision on this point, and to say that the plea to the jurisdiction cannot be maintained. Exception 28 charges error on the part of the Circuit Judge for "Not holding that the said plaintiffs have no right to attack the said attachments as being contrary to the provisions of the assignment act, until they have first obtained judgment and had a return of *nulla bona* made upon their executions." This issue, also, was argued and decided in the same former appeal. See 37 S. C., 237-8-9. It was there held that the plaintiffs, suing by a creditor's bill for themselves and other creditors, cannot be required to await judgment at law and return of *nulla bona* on their executions.

No reason has been furnished us for changing the opinion then expressed.

Exceptions 23 and 24 allege error in the Circuit Judge for holding as nullities judgments by default recovered by the appellants against Youngblood, their codefendant, pending the former appeal. To borrow the language of the Circuit decree: "It appears that after Judge Witherspoon had dismissed the complaint, and pending the appeal from his decision, the attachment creditors as plaintiffs in the attachment suits moved for judgment against Youngblood, who had not *answered* the complaint in attachment. This was at the October Term, 1891, before Judge Kershaw, who granted judgments by default," &c. In considering this issue, it is not to be forgotten that the property in dispute—the assets of the attachment debtor—had by order of Judge Wallace been sold, and the proceeds placed in the hands of the sheriff, subject to the further order of the court. When, therefore, Judge Witherspoon dismissed the complaint under which the injunction had been granted, it is plain that, pending the appeal from his decision, the attachment creditors could not obtain a lien upon the fund thus taken charge of by the court. We agree with Judge Izlar, that when they moved for judgment pending the appeal, they did so in the face of the fact that, if the appeal were sustained, the injunction would be restored in full force, and the parties placed in the position they occupied before the complaint was dismissed. Such is our view of the law; and we see no error in the Circuit Judge's ruling and holding that the said judgments were nullities, and could have no preference.

Exceptions 13 and 14 allege error because the Circuit Judge did not hold that the question of assignment and preference was eliminated from the case by the decree of Judge Witherspoon and the opinion of the Supreme Court; and in not holding that the plaintiffs were estopped and concluded by the said decree from making any attack upon the attachments under the assignment act. On this point the Circuit decree is sufficiently clear. It quotes from our former opinion in this case and from the decree of Judge Witherspoon, and shows conclusively that the question of preference or pri-

ority under the act of assignment was not eliminated, but that the case went back from this court intact, with not one of its allegations or causes of action eliminated. The language of our former opinion sustains the view of the Circuit Judge where it says: "It is the judgment of this court, that the judgment of the Circuit Court, wherein Judge Witherspoon dismissed the complaint, be reversed, and that the action be remitted to the Circuit Court for trial." Judge Izlar rightly held that the cause was heard on its merits for the first time by him.

Exceptions 1, 2, 3, and 4, in different forms, substantially complain of error on the part of the Circuit Judge in admitting evidence, on the trial of the issue ordered, tending to show, that during the negotiations between the parties at Greenwood, just before the attachments were issued, and afterwards, assurances were given to the creditors, especially by Mr. Giles, the junior partner of the law firm of Graydon & Graydon & Giles, that "Mr. Youngblood was making an assignment for the benefit of all his creditors, saying, also, that he had so advised him." It was not then known that the Messrs. Graydon had withdrawn from the defence of Youngblood, leaving him in charge solely of the junior partner, Mr. Giles, and engaging with the creditors, "Witz, Biedler & Co. and Hurst, Purnell & Co.," for whom they procured the writs of attachment now in contention. The issue involved "collusion and fraud," as to which great latitude is allowed in the proof of the circumstances relied on to establish the charge. Under these circumstances, it seems to us that the statements of those who represented Youngblood constituted an important part of the whole transaction, and were, therefore, a part of the res gestæ. "The principal constituted the agent his representative in the transaction of certain business; therefore, whatever the agent does in the lawful prosecution is the act of the principal whom he represents. And when the acts of the agent will bind the principal, his declarations respecting the subject-matter will also bind him, if made at the same time and constituting part of the res gestæ. They are then in the nature of original evidence and not of hearsay, and are the ultimate facts to be proved, and not an admission of some other fact. They

must be made not only during the continuance of the agency, but in respect to a transaction depending at the very time." 1 Greenl. Evid., § 113, and authorities.

The other exceptions, some twenty in number, relate more or less directly to the charge and decree of the Circuit Judge on the assignment act and the Statute of Elizabeth, and their application to this case. The error they allege in various forms may be stated, generally, to be: *First*, because he held the negotiations and arrangements by which the attachments were procured to be an attempt to evade the assignment act; *second*, that in addition to their remedy under the assignment act, the plaintiffs were entitled to relief, under the Statute of Elizabeth, because the transaction was a scheme of fraud, whereby the attachment creditors, acting in collusion with the attachment debtor, endeavored, not by superior diligence, but by unfair means and deception, to obtain an advantage over the other creditors; and *third*, because he did not confine the plaintiffs either to an attack under the assignment act or to an attack under the Statute of Elizabeth. It was distinctly held in the two former appeals, that the plaintiffs were not required to "narrow their line of attack;" that "at least two remedies exist to give them relief, if they can prove their charges," and that they were not bound to "take one remedy to the exclusion of the other." See 37 S. C., 237. The *two* remedies referred to had been sufficiently indicated in the first appeal. See 37 S. C., 231. It was there held that the complaint sought relief on *two* legal grounds, to wit: under the assignment act and because of fraud. We see no error in the Circuit Judge deciding that the plaintiffs were entitled to relief on either ground. And a careful examination of the evidence, we think, will satisfy any impartial mind that the jury and the judge were fully justified in pronouncing the procuring of the attachments to be a fraud.

As to the assignment act, we adopt the language of the Circuit decree: "Since the passage of our assignment law of 1882, our courts have been made acquainted with many and various efforts to evade its provisions. The transfers of property have taken the form of mortgages, convey-

ances, bills of sale, confessions of judgment. But whenever the court has been satisfied that the transfer of the insolvent debtor's property was, in effect, an assignment for the benefit of certain creditors, to the exclusion of the other creditors, it has not hesitated to set it aside, no matter by what name it might be called. This is the first case, so far as I am aware, in which the attempt has assumed the guise of an attachment. I may add, it is of all forms of evasion yet attempted, the most difficult to expose and set aside. From the view I take of this case, and of the issue presented to the jury, I am compelled to hold that the procuring of the attachments by collusion between the attachment debtor and the attachment creditors was an attempt to give said creditors a preference or priority over the other creditors, by so transferring the debtor's property as to exclude the other creditors and leave nothing to meet their claims; and that as such it was in violation of section 2016 of the General Statutes, in that, although in form and name it was an attachment, in reality and in effect it was an assignment." In this statement and finding we agree with the Circuit Judge.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.