12701

SNIPES v. AUGUSTA-AIKEN RY. & ELECTRIC CORPORATION ET AL.

(149 S. E., 111)

392

*Messrs. Hull, Barrett & Willingham,* and *Hendersons & Salley,* for appellants,

*Messrs. Williams, Croft & Busbee,* for respondent,

July 15, 1929.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE C. T. GRAYDON.

This was an action in tort by the plaintiff against the defendants, Frampton Carter and Augusta-Aiken Railway & Electric Corporation, for alleged personal injuries resulting from the striking of the wagon of the plaintiff by a car of the defendant Augusta-Aiken Railway & Electric Corporation, driven by Carter. The case was tried before Hon. T. J. Mauldin and a jury, and resulted in a verdict in favor of the plaintiff and against both defendants for the sum of $1,900.

On the 13th day of September, 1926, Carter, who was in the employ of the Augusta-Aiken Railway & Electric Corporation, his codefendant, was instructed by F. E. Cortez to take a Chevrolet automobile, the property of the corporation, to Augusta, to either secure certain parts or have certain parts repaired. Carter went to Augusta in said automobile, and, while there waiting for same, received a telephone message that his father was dead. He immediately got in the automobile of his codefendant and started back to Aiken. He returned the car of his codefendant and secured his own car to go to his father's place of residence. While returning to Aiken from Augusta, Carter, driving at a high and dangerous rate of speed, came up behind the wagon of the plaintiff and ran into it from the rear. As a result of this collision, the plaintiff was rendered temporarily unconscious and his mules were caused to run away with him. The plaintiff suffered injury to his leg and other parts of his body, and as a result therefrom was caused great physical pain and mental anguish. Carter's testimony disclosed that he was traveling at a high and excessive rate of speed. It is uncontradicted that the plaintiff was riding on the right side of the road, as he was required to do under the law.

There are five exceptions in the case, and the same will be discussed in the order in which they are presented:

The first question discussed is as to the admissibility of certain statements on the part of one Cortez, admittedly the line superintendent of the Augusta-Aiken

Railway & Electric ·Corporation, that the defendant Carter had been to Augusta for the purpose of procuring a new attachment for the automobile of said railway company. This statement was first made at the time the plaintiff was consulting a physician, immediately after the accident in Aiken. The same statement was made some time later by Cortez, when approached by the plaintiff in an effort to settle the cause. There are three reasons why this testimony was admissible under the circumstances:

(1) It cannot be denied, under the case of *Williams v. Telegraph Co.,* 138 S. C., 286, 136 S. E., 218, that where a statement was made by an agent of a corporation, while still about the instant business of the corporation, it would be admissible on the theory that such statement was, although not a part of the *res gestae* as to the immediate transaction, a part of the *res gestae* as to the general transaction in its entirety. A full discussion in this matter is had in the case of *Meinhard v. Youngblood,* 41 S. C., 325, 19 S. E., 675, where the rule is laid down in conformance with this, quoting from 1 Greenleaf on Evidence, page 113. The correct rule is that, so long as the agent of the company is connected with the business pending and in question, the testimony is a part of the *res gestae* and is competent. Although the Circuit Judge stated that he did not let this testimony in as a part of the *res gestae,* still the general rule is that, if it is competent on this or any other ground it is admissible. *Tenhet v. Railroad Co.,* 82 S. C., 467, 64 S. E., 232; *Crawford v. Railroad Co.,* 56 S. C., 144, 34 S. E., 80; *Stroud v. Railroad Co.,* 79 S. C., 452, 60 S. E., 963; *Lipscomb v. Railroad Co.,* 65 S. C., 156, 43 S. E., 388; *Sou. Ry. v. Howell,* 79 S. C., 288, 60 S. E., 677.

A careful study of the above decisions discloses that the correct rule is that "the admissions of an agent bind the principal if made during the agency and within its scope as to a matter then depending." It will be seen that this is not in

conflict at all with the rule, which has so often been announced in this Court, that declarations of an agent made subsequent to an act are not admissible. The rule is different, however, when the matter in question is still pending within the jurisdiction of the agent. In the instant case this matter was still pending, and Cortez was the man who had supervision and charge of it.

(2) In the cross examination of the plaintiff, Carter, without reserving the objection, the same identical testimony was brought out by the defendant's attorney. It has been held by this Court repeatedly that, where similar testimony is brought out without reservation of the objection, it will cure the alleged objection made in chief, and make the testimony competent.

(3) Later in the case Cortez took the stand, and denied that he made the statement attributed to him by the plaintiff, but admitted that he did talk to plaintiff. If the holding of the defendant corporation, through the agency of Carter, depended solely on the statement of Cortez, and this was the only evidence of such relationship, it might be contended that this testimony could not be introduced for the purpose of contradiction. The testimony was competent, in any event, to contradict the statements of Cortez, and, there being other evidence of agency, the finding was proper under the circumstances.

The second question is alleged error on the part of the Circuit Judge in refusing to direct a verdict in favor of the defendant railway corporation. There was testimony that Carter was in the automobile of his co-defendant. In the case of *Burbage v. Curry,* 127 S. C., 349, 121 S. E., 267, 268, the rule is stated as follows:

"When one is found in possession of the property of another, using it in the service of such other, he is presumed to be the servant of the owner. This presumption follows through the entire case and requires rebuttal evidence on the

part of the owner  *  *  *  and the issue is one for the jury," along with the other facts and circumstances of the case. *Keen v. Army Cycle Co.*, 124 S. C., 342, 117 S. E., 531; *Davis v. Littlefield,* 97 S. C., 171, 81 S. E:, 487; *Osteen v. Oil Co.,* 102 S. C., 146, 86 S. E., 202, L. R. A., 1916-B, 629.

In addition to Carter being in possession of the automobile of the defendant, he was also admittedly returning from an errand, where he was about his codefendant's business. All of the testimony in the case shows that this was a question which should have been submitted to the jury, and was properly submitted to the jury.

The third exception alleges error on the part of the Circuit Judge in charging on contributory negligence and contributory willfulness. There was no testimony in the case to show that the plaintiff was guilty in any way of negligence. He was on the right side of the road, where the law required him to be. He was driving his team at a reasonable and moderate pace. He was struck from behind, and the only way in which he contributed at all to the accident was by being there. There is no merit to this exception, and it is therefore overruled.

The fourth question presented seems to be also insufficient to reverse the case upon considering the entire charge of the Circuit Judge. An examination of the transcript will show that, after the Court had charged the alleged erroneous request on behalf of the plaintiff, the Court charged requests 4 and 5 of the defendant, which fully and correctly stated the law in behalf of the defendant on this point as favorably as it was possible to have the same stated. After the Court finished charging the fifth request, an explanation of that request was given by the Court, which completely cleared up the entire situation. There is seldom a charge of the Circuit Judge which is technically correct in all of its phases, and the proper rule of law is that, where the

charge as a whole covers all points of law involved in the case, and correctly states the law with reference to these points, the same is considered to meet all the requirements of the law. A careful reading of the charge of Judge Mauldin will show that it did cover all phases of the law involved in the case, fully and correctly.

The fifth exception alleges error in the Judge charging plaintiff's second request. Taking this request in connection with the entire charge, there was no error, and this exception is therefore overruled.

There is still another reason why this case should be affirmed. There is a salutary principle of law that, where this Court considers that under all the facts and circumstances of the case the verdict of the jury was reasonable and proper, and that the errors are such as to be harmless, the Court will not reverse the cause. The verdict in this case was reasonable and proper under the circumstances. There was ample evidence to sustain the agency of Carter, eliminating the testimony as to the statements of Cortez. The action of the defendant, Carter, showed a high-handed and willful disregard of the rights of the plaintiff and others using the road lawfully. The plaintiff suffered serious and severe injuries by reason of the collision of the defendant's car with his wagon at the time and place alleged in the complaint, and the verdict was proper under the circumstances. The amount of punitive damages must have been small, if any, considering the injuries detailed by the plaintiff.

All exceptions are therefore overruled, and the judgment of the lower Court is affirmed.

Mr. Justice Stabler concurs.

Mr. Justice Carter concurs in result.

Mr. Chief Justice Watts did not participate.

Mr. Justice Blease (concurring in result) : I am inclined to think that, standing alone, there was error on the part of

the Circuit Judge in charging the first request of the plaintiff, which request was as follows:

"The jury is charged that as unfortunate as it may be for an agent or servant of the principal or master to receive the news of the death of a relative, yet nevertheless the servant or agent is bound to the same principles of law in determining the questions of whether or not there is negligence, recklessness or willfulness in the handling of an automobile as he would be if he had received no such news. In other words, the receipt of news of death of a relative in no manner relieves the servant or agent of his duties to his fellowman and he is bound in the same manner to their exercise as he would be had he received no such news, and the principal or master is bound to the same degree for the conduct of his agent notwithstanding the receipt of any such news."

The request, in my opinion, should have been modified by striking out the words "recklessness or willfulness," or there should have been added to it some language to indicate that the jury could take into consideration, in the assessment of punitive damages, the conditions surrounding Carter, the driver of the automobile, at the time of the accident. In fixing punitive damages, the jury ought to be allowed to consider the mental condition of a person who may have been reckless at the time. I am not disposed, however, to regard the error referred to as prejudicial in this case, for two reasons: First, the verdict rendered, when the plaintiff's injuries were very serious, seems to indicate that the jury did take into consideration the mental condition of the defendant, Carter, at the time of the accident. Second, the whole charge of the presiding Judge corrected, perhaps, the error I think he fell into at the suggestion of plaintiff's counsel.

MR. JUSTICE COTHRAN (dissenting) : This is an action for damages, actual and punitive, in the sum of $20,000, on account of personal injury alleged to have been sustained by the plaintiff by reason of the negligent, wanton, and reckless

act of the defendants. While the complaint alleges that the injurious act was the joint and concurrent tort of the defendants, the basis of the action is the alleged negligent and willful act of the employee-defendant in causing a collision between the automobile which he was driving and the wagon of the plaintiff, resulting in injury to the plaintiff.

The vital issue in the case, so far as the corporation is concerned, was whether the employee, at the time of the collision, was acting within the course of his employment, or upon a personal mission of his own. An issue upon the appeal, affecting both defendants, is whether the presiding Judge erred in his charge to the jury upon the question of punitive damages.

The facts were these: As the defendant, Carter, an employee of the defendant corporation, was returning from Augusta to Aiken, in an automobile which belonged to the company, driven by him, he collided with the wagon of the plaintiff, which was drawn by two mules, driven by him, and moving in the same direction as the defendant, Carter, was moving.

The evidence on behalf of the defendants tended to show the linemen, to take a certain automobile attachment from that Carter, a lineman, was directed by Cortez, foreman of Aiken to a mechanic in Augusta for repair; he was intrusted with an automobile belonging to the corporation in which to make the trip from Aiken to Augusta; he went to Augusta, left the attachment with the mechanic, and was to call for it repaired in about two hours. In the meantime, while in a restaurant for lunch, he received news of the sudden death of his father, who lived some three or four miles on the other side of Aiken from Augusta. He was greatly shocked, and, without waiting for the repair of the attachment, hurriedly returned to Aiken, where he expected to leave the company's car and ride in his own car to his father's home. On the road between Augusta and Aiken the collision occurred. In his

natural haste under the circumstances, he attempted to pass the wagon from the rear and to the left, when he saw a Ford car meeting him. A collision with that car seemed inevitable, and in trying to avoid it he ran into the plaintiff's wagon, throwing the plaintiff out and causing personal injury to him.

The plaintiff contended that it was a necessary incident of the employee's mission to drive the car back from Augusta to Aiken and deliver it to the company; also that the employee had been sent to Augusta, *not to have the attachment repaired, but to get a new one, which he had in the car with him as he returned to Aiken.* The defendant company contended that the employee, upon hearing of the death of his father, abandoned the errand upon which his employer had sent him, and was engaged in a personal mission, to reach the home of his afflicted people, for the consequences of which he alone was responsible.

In order to sustain his contention that Carter was sent to Aiken to get a new attachment, and not to have the old one repaired, and that he brought the new one back with him, the plaintiff offered, over the obection of the defendants, evidence of two conversations had by him with Cortez, superintendent of the linemen employed by the defendant company, in which Cortez stated to him that he sent the defendant-employee, Carter, to Aiken for the purpose of *procuring a new attachment* (not to have an old one repaired), and that he was, at the time of the collision, returning to Aiken *with the new attachment in the car.*

The case was tried before his Honor, Judge Mauldin, and a jury; the trial resulting in a verdict in favor of the plaintiff for $1,900 (not separated), and from the judgment entered thereon the defendants have appealed.

I. The defendant corporation moved for a directed verdict in its favor, upon the ground that the evidence conclusively showed that the employee, at the time of the collision, was not acting about the business of the corporation, but had

abandoned it, and was upon a purely personal mission; it appeals from the refusal of this motion.

There was no controversy as to the fact that Carter was intrusted by the foreman of the linemen with the automobile to go to Augusta, either for the purpose of having the attachment repaired or of procuring a new one, and to return with the automobile to Aiken. In the case of *Burbage v. Curry,* 127 S. C., 349, 121 S. E., 267, it was held: "When one is found in possession of property of another, using it in the service of such other, he is presumed to be the servant of the other. This presumption follows through the entire case, and requires rebuttal evidence on the part of the other, and the issue is one for the jury.  *  *  *"

Another principle of law is that a condition once proved to exist will be presumed to have continued, in the absence of opposing evidence. The agency was unquestionably established, certainly until Carter delivered the attachment to the mechanic in Augusta. The burden was then upon the party claiming the benefit of the fact to show that the mission had been abandoned and a new personal one had been taken up by the employee. That made an issue for the jury.

Furthermore, when the presiding Judge admitted the testimony of the plaintiff, of the declarations and admissions of Cortez, as evidence against the defendant corporation, it was impossible for him, as long as he allowed that evidence to remain in the case, to have granted the defendant's motion for a directed verdict.

Even if the Court could, assuming the truth of the employee's statement indicating a deviation from the mission undertaken by him, say that the circumstances constituted such a deviation as would exonerate the employer, to do so would require the acceptance of the testimony of the employee at its face value. The truth of his explanation was for the jury. I think, therefore, that the motion for a directed verdict was properly refused.

II. I think that the admission of the testimony of the plaintiff, as to the declarations of Cortez, to the effect that he sent Carter to Augusta for the purpose of procuring a new attachment, not to repair an old one, and that he had the attachment in the car as he was returning, was clearly erroneous and seriously prejudicial to the defendant company. If this testimony was properly admitted, and was believed by the jury, there could, of course, be no question but that at the time of the collision the employee was acting within the course of his employment; that was *the vital issue* in the case, so far as the corporation defendant was concerned.

It is declared in the opinion of Mr. Justice Graydon: "There was ample evidence to sustain the agency of Carter, eliminating the testimony as to the statements of Cortez."

I have searched the record for this amplitude, and all that I can find is the presumption referred to above under division I, which the jury may have concluded, but for this erroneously admitted testimony, was amply rebutted by the evidence on behalf of the defendants. I do not think that it can be rightly held that presumptive evidence, subject to the rebuttal evidence which was before the jury, is ample proof, or that the improper admission of direct evidence to support such a presumption was not prejudicial.

There is quite a good deal of confusion of thought and lack of discrimination manifest in the treatment of the subject of the admissibility of declarations of an agent. The lack of discrimination and consequent confusion of thought is demonstrated by the failure to differentiate between the declarations of an agent which are part of the *res gestae* and those declarations which were made *in the course of his employment,* and while the matter in controversy was actually pending. The declarations of an agent, which are shown to have been a part of the *res gestae,* are admitted, not because he was an agent, but because they come within the class of

. excepted hearsay evidence which fulfills the requirements of the *res gestae* rule; the declarations of one not an agent would be received under the same conditions. The declarations of an agent made within the course of his employment and while the matter in controversy was pending, are admitted, not because they were made as a part of the *res gestae*, but because they were made under the circumstances stated. They would be received weeks or months after the episode inquired into, provided that they were made under those circumstances. They may utterly fail of complying with the rule of *res gestae*, and still be admissible upon the entirely different foundation. It is misleading and incorrect, manifestly, to hold that, before the declarations of an agent can be received, they must be shown to have been both a part of the *res gestae* and within the course of his employment. They may have been either or both, and admissible for that reason.

Mr. Tiffany, in his work on Agency (2d Ed.), § 106, makes the matter as clear as sunlight. He concludes thus: "On the one hand, declarations made at the time of the act by the parties participating therein and part of the *res gestae* —that is, of the surrounding circumstances—are admissible, irrespective of whether the participants are servants of the person sought to be held responsible for the act, and by whomsoever made. On the other hand, the statement of a servant or agent is admissible as an admission, if it is made when he is engaged in some authorized transaction, and it is within the scope of his authority in that transaction to make the statement. To illustrate: In an action against a railway company, by a person injured by a collision, the declaration of the engineer, referring directly to and characterizing or explaining the occurrence, made at the time or immediately afterwards, under its immediate influence, may, under the circumstances of the case, be held part of the *res gestae*, and admissible against the company upon that ground. It might be, however, that some subsequent statement of the

engineer as to the cause of the accident, although not part of the *res gestae,* would be evidence against the company as an admission, as, for example, if it happened to be made by him in the course of his duty in making a report of the accident to a superior officer. In the one case the declaration of the engineer is admissible as a circumstantial fact, as part of the *res gestae,* because it is the spontaneous utterance of a participant in the event. In the other case his statement is admissible against the company as an admission, because it is made at a time and under circumstances when the engineer has authority to make it. If the statement is not admissible, either as a declaration forming part of the *res gestae,* or as an admission, it cannot be received."

His Honor, the Circuit Judge, upon objection to the testimony, made this ruling: "I am going to admit the testimony, not on the ground as a part of the *res gestae,* of course; but I will admit it." His ruling is the "law of the case," to the effect that the alleged declarations were not a part of the *res gestae;* but, if not, it is so manifestly correct as to require little, if any, bolstering.

The first declaration was made, as the plaintiff testified, some forty-five minutes after the collision; the collision had occurred somewhere between Augusta and Aiken, exactly how far from Aiken does not appear. The plaintiff had been carried to Aiken, and had been to a doctor for treatment; as he was leaving the building, he met Cortez at the foot of the elevator; Cortez asked him about his injuries, and felt his leg. Then he is alleged to have made the statement about Carter. The second declaration was made a month later, when the plaintiff went to the office to see about a settlement with the company.

Compare these incidents with the essentials of *res gestae,* as defined by Mr. Tiffany in the section referred to. "They [declarations comprising statements, exclamations, and other utterances] are received on the ground of their spontaneity.

'They are the extempore utterances of the mind under circumstances and at times when there has been no sufficient opportunity to plan false or misleading statements; they exhibit the mind's impressions of immediate events, and are not narrative of past happenings.' Such declarations constitute an exception to the hearsay rule. To be admissible, they must be made while the act is being done or the event happening, or so soon thereafter that the mind of the declarant is actively influenced by it."

In *Shelton v. Railroad Co.,* 86 S. C., 98, 67 S. E., 899, 901, this Court said: "In *State v. McDaniel,* 68 S. C., 304, 47 S. E., 384, 102 Am. St. Rep., 661, it was held that, while the declaration, in such cases, to be admissible as part of the *res gestae,* must be substantially contemporaneous with the litigated transaction, and be the instinctive, spontaneous utterance of the mind, while under the active influence of the transaction, the circumstances precluding the idea that it is the result of reflection or design.   *   *   *"

Passing, then, the issue of the declarations of Cortez being a part of the *res gestae,* as settled against their status as such, the question remains to be considered whether they were made by Cortez in the course of his employment and while the matter in controversy was actually depending.

The status of the declarant, his relation to the company, is fixed by the testimony of the plaintiff himself, and is not controverted. This is his testimony: "A lineman is one who puts up poles and repairs the lines and that kind of work. Edmund Cortez is the superintendent of these linemen, and he has been the superintendent for years."

There is not a particle of evidence tending to show that he was charged with the slightest duty in connection with the collision. He had no participation in it; was not present. It does not appear that he was charged with the duty of investigating the circumstances of the collision, or was engaged in so doing, with a view of making a report, or dis-

ciplining Carter, or of compounding with the plaintiff, or otherwise.

The interview with the plaintiff does not develop an effort upon his part to have anything to do with the collision; it was entirely outside of his department, which was to erect transmission poles, string wires, and repair the line; the investigation of accidents for which the company might be held responsible, and the settlement of claims of the injured, necessarily and naturally were committed to another department than that of building and maintaining the trolley line.

The first interview Cortez had with the plaintiff was in the City of Aiken, some forty-five minutes after the collision and miles away from it. The plaintiff had gone to see a doctor, and had at least been examined by him. As he was returning from the doctor's office, he casually met Cortez at the elevator. Cortez inquired as to the extent of his injuries, and that was all. He made no effort to learn the circumstances, or to suggest a settlement.

The second interview, a month later, occurred in the company's office where the plaintiff had gone to see about a settlement for his injuries. He mentioned the matter to Cortez, who declined to discuss it with him, and referred him to the manager, Sudlow; a positive declination to have anything to do with it.

In *Piedmont Co. v. Railroad Co.*, 19 S. C., 353, 373, the Court said: "Next and last, as to the admissibility of the letters of McCaughrin, the president of the defendant company: These letters were the written declaration of an agent, and their admissibility must depend upon the rules of evidence in such cases. These rules would allow such declarations when constituting a part of the *res gestae,* or when made within the scope of the agency, but declarations made some time after the act and beyond the scope of the agency should not be allowed."

In *Petrie v. Railroad Co.,* 27 S. C., 63, 2 S. E., 837, 838, the plaintiff proposed to ask a witness, who was on the train when the disaster occurred, what she heard the railroad employees say, which upon objection was ruled out; the Court saying: "You can't bind the company by what one of its employees would say after an occurrence. I rule that the declarations of an agent, made in the due course of his agency, are binding upon the principal, but that the declarations of one of these employees after the event is not competent."

The Court, considering the exception, said: "There is no doubt as to the general rule that declarations of third persons are not admissible, and to bring these declarations within the exceptions to such rule it would be necessary for the party proposing to use them to show, first, either that they were a part of the *res gestae,* or that they were made by some agent of the party against whom they are offered in the course of such agency."

In *Meinhard v. Youngblood,* 41 S. C., 312, 19 S. E., 675, a conveyance of the debtor's property was attacked for fraud. The Court admitted the declaration of the attorney for the defendant made in negotiations preceding the suit, between the attorney and the creditors looking to a settlement, to the effect that the defendant proposed to make an assignment for the benefit of all his creditors and that he had so advised him. The Court in sustaining the admission of the testimony said: "Under these circumstances, it seems to us that the statements of those who represented Youngblood constituted an important part of the whole transaction, and were therefore a part of the *res gestae.*"

The Court quoted with approval the following from 1 Greenl. Ev., § 113: "The principal constituted the agent his representative in the transaction of certain business; therefore, whatever the agent does in the lawful prosecution is the act of the principal whom he represents; and, when the *acts* of the agent will bind the principal, his *declarations* re-

specting the subject-matter will also bind him, if made at the same time, and constituting part of the *res gestae*. They are then in the nature of *original evidence,* and not hearsay, and are the ultimate facts to be proved, and not an admission of some other fact. They must be made, not only during the continuance of the agency, but in respect to a transaction depending at the very time."

In *Garrick v. Railroad Co.,* 53 S. C., 448, 31 S. E., 334, 69 Am. St. Rep., 874, the intestate had been employed by the defendant at work on bridges and trestles under the direction of one Renfroe, who was charged with the duty of keeping them in proper repair. It became important in the case to show that the intestate was riding a velocipede at the suggestion of his foreman. A witness was allowed to testify that he heard Renfroe say, the night the intestate was hurt, that the latter started home on foot, and that he called to him to ride the wheels (the velocipede). The Court said: "It seems to us that these declarations of Renfroe, made after the event, were no part of the *res gestae,* and were not made in the course of his agency, and were therefore inadmissible, under the case of *Petrie v. Railroad Co.,* 27 S. C., 63, 2 S. E., 837."

In *Salley v. Railroad Co.,* 62 S. C., 127, 40 S. E., 111, a witness upon a second trial was allowed to state that upon the first trial he had heard the engineer testify that the train upon the occasion in question was run without signals by bell or whistle. The Court held that the admission was erroneous, as the declaration did not appear to have been a part of the *res gestae.*

In *Rutland v. Railroad Co.,* 81 S. C., 448, 62 S. E., 865, declarations of an agent were held admissible upon the following ground: "It appearing that Mr. Adams was claim agent, with duty to adjust and pay claims against defendant, and that the declaration was made while attempting to adjust plaintiff's claim, we hold that Mr. Adams was acting

within the scope of his authority as agent of the Southern Railway, and therefore overrule this exception."

In *Nelson v. Railroad Co.*, 92 S. C., 151, 121 S. E., 198, it was held (quoting syllabus) : "The statements of a conductor, the next day after the wreck, in conversation with a passenger, from whom he was seeking a statement of the facts of the accident, are binding on the carrier."

The ground of admission was thus expressed by the Court: "The testimony tended to show that the conductor, who certainly was the agent of the company, was still engaged in the business of the wreck, and went to the plaintiff for the purpose of getting a statement from him as a part of his official duties in connection with the wreck. An agent is rarely, if ever, commissioned expressly to make admissions of responsibility; but it would be monstrous to hold that an agent to get admissions could make none."

In that case Justice Woods said, in concurring in result: "There was no evidence that the conductor was authorized to settle plaintiff's claim, or even that he knew there was a claim. The alleged statement was made a day after the wreck, and therefore was not a part of the *res gestae*. Under such circumstances, the testimony was clearly incompetent, unless all the authorities on the subject are to be overruled" (citing cases).

Even a majority of the Court would have held, I feel sure, that if the conductor had had nothing to do with the wreck, nor with obtaining information in reference to the plaintiff's case, his declarations would not have been a part of the *res gestae*, nor within the course of his employment, and were therefore inadmissible.

In *Gilliam v. Railroad Co.*, 108 S. C., 195, 93 S. E., 865, the syllabus is: "In an action for the death of an employee, the statements of deceased's foreman concerning the accident and the death, made several days thereafter, were not admissible against the employer, and should have been excluded as hearsay."

In *Sandel v. State,* 126 S. C., 1, 119 S. E., 776 (opinion by Justice Marion), the Court said: "If an agent commits a tort, while acting within the scope of the agency the principal is liable; but if he makes declarations or admissions concerning it, so long afterwards that they cannot be admitted as part of the *res gestae,* the principal is not bound by them" (citing cases).

In 21 A. & E. Enc. L., 108, quoted with approval in *Gosa v. Railroad Co.,* 67 S. C., 347, 45 S. E., 810, it is said: "Where an agent is acting within the scope of his agency, his declarations, made to the person whose interests are directly involved, at the place where transaction or occurrence happened, so near the occurrence or transaction in point of time as to be justly and reasonably regarded as part of it, are ordinarily to be regarded as part of the *res gestae.* But they must be made, not only during the continuance of the agency, but in regard to a transaction depending at the very time."

In 1 Greenleaf Ev., § 113, quoted with approval in *Gosa v. Railroad Co.,* 67 S. C., 347, 45 S. E., 810, and also in *Railroad Co. v. O'Brien,* 119 U. S., 99, 7 S. Ct., 118, 30 L. Ed., 299, it is said: "But it must be remembered * * * that the admission of the agent cannot always be assimilated to the admission of the prinicpal. The party's own admission, whenever made, may be given in evidence against him; but the admission or declaration of his agent binds him only when it is made during the continuance of the agency, in regard to a transaction then depending, *et dum fervet opus.*"

It is sought to sustain the admission of the testimony by assimilating the situation to that presented in the case of *Williams v. Telegraph Co.,* 138 S. C., 281, 136 S. E., 218. I think that this case is essentially different from the case at bar, and that it demonstrates the inadmissibility of the testimony.

In the *Williams case,* Arthur Williams, a nephew of the plaintiff, delivered to Smith, agent of the telegraph company,

at Beldoc, S. C., a telegram addressed to the plaintiff at Brunson, S. C., for transmission. The telegram was never delivered. It appears to have been an issue in the case whether the telegram was transmitted directly to Brunson, or to Augusta and then relayed to Brunson, evidently as affecting the matter of interstate regulations. The sender of the message, after its non-delivery appeared, investigating the cause, went to the office at Beldoc four or five days thereafter, and during the interview with Smith, the operator who had received the message for transmission, Smith stated to the sender that the message had been "sent straight to Brunson." Objection was made to the admission of this declaration of Smith upon the ground that it was not a part of the *res gestae,* as it was made "after the event." It will be observed that the ground of the objection was as stated, and *not* upon the ground that the declaration was not made during the course of the declarant's employment, while the matter was unconcluded, pending.

In sustaining the admission of the testimony the learned Justice (Judge Purdy, Acting Associate Justice) bases the admission squarely upon the fact that the evidence tended to show an issue for the jury, that the declaration was made during the course of the declarant's employment. It is said: "We prefer to adopt the view that, so long as anything remains to be done, the statements of the agent are competent, *if made within the scope of his agency* [citing cases]. At the time that the inquiry was made by Williams, the telegram had not been delivered, and the matter was pending. In fact, it has never been delivered, and the authorities are abundant that, in such cases, statements made would be deemed to be *within the scope of the agent's authority* [citing cases]. The person of whom inquiry was made by the witness Williams was still the agent of the appellant, and, so long as the transaction continued, the acts and deed emananting from it became a part of it. * * *"

I have very great doubt as to the correctness of this decision. The declaration of the operator was allowed upon the

ground that the *claim of the plaintiff* was still pending; not that *the transaction was*. The transaction was completed by the failure to deliver within a reasonable time; it was upon that theory alone that the plaintiff had a case. The conception that the transaction was pending as long as the plaintiff had not been settled with is, in my opinion, a mistaken one, unless the declarant was one charged with the duty of investigating the claim or compounding it with the claimant.

In *Railroad Co. v. O'Brien,* 119 U. S., 99, 7 S. Ct., 172, 30 L. Ed., 299, the Court said: "It is true that, in view of the engineer's experience and position, his statements under oath, as a witness, in respect to that matter, if credited, would have influence with the jury. Although the speed of the train was, in some degree, subject to his control, still his authority, in that respect, did not carry with it authority to make declarations or admissions at a subsequent time, as to the manner in which, on any particular trip, or at any designated point in his route, he had performed his duty. His declaration, after the accident had become a completed fact, and when he was not performing the duties of engineer, that the train, at the moment the plaintiff was injured, was being run at the rate of eighteen miles an hour, was not explanatory of anything in which he was then engaged. It did not accompany the act from which the injuries in question arose. It was, in its essence, the mere narration of a past occurrence, not a part of the *res gestae;* simply an assertion or representation, in the course of conversation, as to a matter not then pending, and in respect to which his authority as engineer had been fully exerted."

At any rate, the case is clearly differentiated from the case at bar, in that the declarant was the agent with whom the transaction was initiated; here Cortez had nothing to do with it.

III. The defendants complain of error in the Judge's charge to the effect that, although the employee had received

news of the death of his father and was hurrying to the home, he was bound by the same principles of law in determining whether he was negligent, willful, or reckless in the circumstances of the collision, as if he had received no such news; that the master is bound to the same degree for his conduct, notwithstanding the receipt of such news.

I think that, so far as the issue of the negligent or reckless conduct of the employee was concerned, it was no excuse that the employee was upon such an emergency call. If in responding to it he was guilty of a negligent act, the apparently extentuating circumstances would not relieve him of the charge of negligence; and in like manner he would not be relieved of the charge of willfulness or recklessness. But certainly the servant as well as the master would have the right to lay all of the facts before the jury, in determining the amount of punitive damages which the jury was called upon to assess, in the event that they concluded that his act was willful or reckless. As imposition of punitive damages is so largely a matter of discretion with the jury, the defendant is entitled to have all of the circumstances which might affect such imposition before them, and it must be conceded that the purpose with which a wrongdoer has committed an act of recklessness or a violation of the law from which recklessness might greatly affect the punishment which was to be meted out to him.

IV. I do not agree with the following statement in the opinion of Mr. Justice Graydon: "There is a salutary principle of law that, where this Court considers that under all the facts and circumstances of the case the verdict of the jury was reasonable and proper, and that the errors are such as to be harmless, the Court will not reverse the cause. The verdict in this case was reasonable and proper under the circumstances."

I understand that the function of this Court in cases at law is to determine simply whether a prejudicial error of law

has been committed in the lower Court; it has, under the Constitution, no power to review the facts and decide whether or not the verdict of the jury was "reasonable and proper." I do not see how it can reach this conclusion without a review of the facts and the inferences from facts in a case; a function which is explicitly denied to it by the Constitution, except in chancery cases.

For these reasons, I think that the judgment should be reversed, and a new trial ordered.