# VICKSBURG & MERIDIAN RAILROAD *v.* O'BRIEN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF MISSISSIPPI.

Argued April 19, 20, 1886. — Decided November 1, 1886.

In an action against a railroad company by a passenger to recover for injuries received by an accident to a train, a written statement as to the nature and extent of his injuries, made by his physician while treating him for them, for the purpose of giving information to others in regard to them, is not admissible in evidence against the company, even when attached to a deposition of the physician in which he swears that it was written by him, and that in his opinion it correctly states the condition of the patient at the time referred to.

The declaration of the engineer of the locomotive of a train which meets with an accident, as to the speed at which the train was running when the accident happened, made between ten and thirty minutes after the accident occurred, is not admissible in evidence against the company in an action by a passenger on the train to recover damages for injuries caused by the accident.

The case is stated in the opinion of the court.

*Mr. Edgar M. Johnson*, (with whom were *Mr. George Hoadly* and *Mr. Edward Colston* on the brief,) for plaintiff in error, cited: *Russell* v. *Hudson River Railroad*, 17 N. Y. 134; *Luby* v. *Hudson River Railroad*, 17 N. Y. 131; *Michigan Central Railroad* v. *Gougar*, 55 Ill. 503; *Morse* v. *Connecticut River Railroad*, 6 Gray, 450; *Lane* v. *Bryant*, 9 Gray, 245; *S. C.* 69 Am. Dec. 282; *Curl* v. *Chicago & Rock Island Railroad*, 11 Am. & Eng. Railroad Cas. 85; *Dietrich* v.

*Baltimore &c. Railroad*, 58 Maryland, 347; *Furst* v. *Second Avenue Railroad*, 72 N. Y. 542; *Bellefontaine Railroad* v. *Hunter*, 33 Ind. 335; *Sims* v. *Macon & Western Railroad*, 28 Georgia, 94; *Enos* v. *Tuttle*, 3 Conn. 247; *Fuller* v. *Naugatuck Railroad*, 21 Conn. 557; *Baltimore City Railway Co.* v. *Kemp*, 61 Maryland, 74.

*Mr. William Nugent* also filed a brief for plaintiff in error.

*Mr. Thomas C. Catchings* for defendants in error, cited as to the points decided by the court: *Commonwealth* v. *McPike*, 3 Cush. 181; *S. C.* 50 Am. Dec. 727; *Enos* v. *Tuttle*, 3 Conn. 247.

Mr. JUSTICE HARLAN delivered the opinion of the court.

This action was brought by Mary E. O'Brien and her husband, John J. O'Brien, to recover damages sustained in consequence of personal injuries received by the wife in September, 1881, while a passenger upon the Vicksburg and Meridian Railroad. The declaration alleges that the company "so carelessly, negligently, and unskilfully constructed and maintained its railroad track, engine, and cars, and so carelessly, negligently, and unskilfully conducted itself in the management, control, and running of the same," that the car in which Mrs. O'Brien was seated as a passenger was thrown from the railroad track and overturned, whereby she was seriously injured. There was a verdict and judgment for $9000 in favor of the plaintiffs.

1. At the trial the plaintiffs offered to read to the jury the deposition of a physician, and did read the first, second, and third interrogatories propounded to him, and the answers thereto. Responding to the first and second interrogatories, he stated, among other things, that his attendance upon Mrs. O'Brien commenced on the 16th of September, 1881; that he found her suffering extreme pain and in a very nervous condition, resulting a few hours before from a railroad accident on defendant's road; that such was the cause of her injuries

he knew from her own answers, from the statement of her brother-in-law, and from attending others who were on the train with her. The third interrogatory and answer were as follows:

"3. Look on the accompanying statement, dated November 26th, 1881, and state if it was written by you at the date it bears, for what purpose it was written, and to whom it was delivered. Does the statement represent substantially and correctly Mrs. O'Brien's condition as it appeared when you first saw her, and as it continued up to November 26th, 1881?

"Answer: I have looked upon the statement referred to, which was written by myself, at Mr. O'Brien's request, at the date mentioned, when he was about to take his wife away from here to his home in New Orleans, and was intended to convey an idea of how she was when I was called to see her, and what her condition was when she left my charge; and in my opinion I correctly stated her condition at the times referred to."

The written statement referred to in the interrogatory was signed by the witness, and attached to his deposition as an exhibit. It was addressed to Mr. O'Brien, and sets forth, with much detail, the nature of the injuries received by the wife, and their effect upon her bodily and mental condition. It also embodied an expression of the witness' opinion as to the probable length of time within which she might recover from her injuries. The plaintiff, before reading the remaining interrogatories and answers, offered to read this statement to the jury as evidence. The company objected, upon these grounds: That it was not made by the witness under oath, and in defendant's presence, or with its knowledge and consent; that it was hearsay evidence, and, therefore, wholly incompetent; and that, in any event, it could only be referred to by the witness to refresh his recollection. The court overruled the objection and permitted the statement to be read in evidence, the defendant taking an exception thereto, which was allowed. The remainder of the deposition was then read to the jury.

We are of opinion that this ruling cannot be sustained upon any principle recognized in the law of evidence. The authori-

ties are uniform in holding that a witness is at liberty to examine a memorandum prepared by him, under the circumstances in which this one was, for the purpose of refreshing or assisting his recollection as to the facts stated in it.

But there are adjudged cases which declare that, unless prepared in the discharge of some public duty, or of some duty arising out of the business relations of the witness with others, or in the regular course of his own business, or with the knowledge and concurrence of the party to be charged, and for the purpose of charging him, such a memorandum cannot, under any circumstances, be admitted as an instrument of evidence.[1] There are, however, other cases to the effect, that, where the witness states, under oath, that the memorandum was made by him presently after the transaction to which it relates, for the purpose of perpetuating his recollection of the facts, and that he knows it was correct when prepared, although after reading it he cannot recall the circumstances so as to state them alone from memory, the paper may be received as the best evidence of which the case admits.[2]

The present case does not require us to enter upon an examination of the numerous authorities upon this general subject; for, it does not appear here, but that at the time the witness testified he had, without even looking at his written statement, a clear, distinct recollection of every essential fact stated in it. If he had such present recollection, there was no necessity whatever for reading that paper to the jury. Applying, then, to the case the most liberal rule announced in any of the authorities, the ruling by which the plaintiffs were allowed to read the physician's written statement to the jury as evidence, in itself, of the facts therein recited, was erroneous.

---

[1] Note by the Court. *Lightner* v. *Wike*, 4 S. & R. 203; *Calvert* v. *Fitzgerald*, Litt. Sel. Cases, 388; *Lawrence* v. *Barker*, 5 Wend. 305; *Redden* v. *Spruance*, 4 Harrington (Del.), 265, 267–8; *Field* v. *Thompson*, 119 Mass. 151.

[2] Note by the Court. *Russell* v. *Hudson River Railroad*, 17 N. Y. 134, 140; *Guy* v. *Mead*, 22 N. Y. 465; *Merrill* v. *Ithaca & Oswego Railroad*, 16 Wend. 586; *S. C.* 30 Am. Dec. 130; *Kelsea* v. *Fletcher*, 48 N. H. 282; *Haven* v. *Wendell*, 11 N. H. 112; *Mims* v. *Sturdevant*, 36 Ala. 636, 640; *State* v. *Rawle*, 2 Nott & McCord, 331, 334.

It is, however, claimed, in behalf of the plaintiffs, that in his answers to other interrogatories the physician testified, apart from the certificate, to the material facts embodied in it, and that, therefore, the reading of it to the jury could not have prejudiced the rights of the defendant, and, for that reason, should not be a ground of reversal.

We are unable to say that the defendant was not injuriously affected by the reading of the physician's certificate in evidence. It is not easy to determine what weight was given to it by the jury. In estimating the damages to be awarded in view of the extent and character of the injuries received, the jury, for aught that the court can know, may have been largely controlled by its statements. The practice of admitting in evidence the unsworn statements of witnesses, prepared, in advance of trial, at the request of one party, and without the knowledge of the other party, should not be encouraged by further departures from the established rules of evidence.

While this court will not disturb a judgment for an error that did not operate to the substantial injury of the party against whom it was committed, it is well settled that a reversal will be directed unless it appears, beyond doubt, that the error complained of did not and could not have prejudiced the rights of the party. *Smiths* v. *Shoemaker*, 17 Wall. 630, 639; *Deery* v. *Cray*, 5 Wall. 795; *Moores* v. *Nat. Bank*, 104 U. S. 625, 630; *Gilman* v. *Higby*, 110 U. S. 47, 50.

2. At the trial below, plaintiffs introduced one Roach as a witness, who, during his examination, was asked whether he did not, shortly after the accident, have a conversation with the engineer having charge of defendant's train at the time of the accident, about the rate of speed at which the train was moving at the time. To that question the defendant objected, but its objection was overruled, and the witness permitted to answer. The witness had previously stated that, on examination of the track after the accident, he found a cross-tie or cross-ties under the broken rail in a decayed condition. His answer to the above question was: "Between ten and thirty minutes after the accident occurred, I had such a conversation

with Morgan Herbert, the engineer having charge of the locomotive attached to the train at the time of the accident, and he told me that the train was moving at the rate of eighteen miles an hour." The defendant renewed its objection to this testimony by a motion to exclude it from the jury. This motion was denied, and an exception taken. As bearing upon the point here raised it may be stated that, under the evidence, it became material — apart from the issue as to the condition of the track — to inquire, whether, at the time of the accident, (which occurred at a place on the line where the rails in the track were, according to some of the proof, materially defective,) the train was being run at a speed exceeding fifteen miles an hour. In this view, the declaration of the engineer may have had a decisive influence upon the result of the trial.

There can be no dispute as to the general rules governing the admissibility of the declarations of an agent to affect the principal. The acts of an agent, within the scope of the authority delegated to him, are deemed the acts of the principal. Whatever he does in the lawful exercise of that authority is imputable to the principal, and may be proven without calling the agent as a witness. So, in consequence of the relation between him and the principal, his statement or declaration is, under some circumstances, regarded as of the nature of original evidence, "being," says Phillips, " the ultimate fact to be proved, and not an admission of some other fact." 1 Phil. Ev. 381. "But it must be remembered," says Greenleaf, "that the admission of the agent cannot always be assimilated to the admission of the principal. The party's own admission, whenever made, may be given in evidence against him; but the admission or declaration of his agent binds him only when it is made during the continuance of the agency in regard to a transaction then depending, *et dum fervet opus*. It is because it is a verbal act and part of the *res gestæ* that it is admissible at all; and, therefore, it is not necessary to call the agent to prove it; but wherever what he did is admissible in evidence, there it is competent to prove what he said about the act *while he was doing it*." 1 Greenleaf, § 113. This court had occasion

in *Packet Co.* v. *Clough*, 20 Wall. 540, to consider this question. Referring to the rule as stated by Mr. Justice Story in his Treatise on Agency § 134, that "where the acts of the agent will bind the principal, there his representations, declarations, and admissions respecting the subject-matter will also bind him, *if made at the same time, and constituting part of the res gestæ,*" the court, speaking by Mr. Justice Strong, said: "A close attention to this rule, which is of universal acceptance, will solve almost every difficulty. But an act done by an agent cannot be varied, qualified, or explained, either by his declarations, which amount to no more than a mere narrative of a past occurrence, or by an isolated conversation held, or an isolated act done, at a later period. The reason is that the agent to do the act is not authorized to narrate what he had done, or how he had done it, and his declaration is no part of the *res gestæ.*"

We are of opinion that the declaration of the engineer Herbert to the witness Roach was not competent against the defendant for the purpose of proving the rate of speed at which the train was moving at the time of the accident. It is true that, in view of the engineer's experience and position, his statements under oath, as a witness, in respect to that matter, if credited, would have influence with the jury. Although the speed of the train was, in some degree, subject to his control, still his authority, in that respect, did not carry with it authority to make declarations or admissions at a subsequent time, as to the manner in which, on any particular trip, or at any designated point in his route, he had performed his duty. His declaration, after the accident had become a completed fact, and when he was not performing the duties of engineer, that the train, at the moment the plaintiff was injured, was being run at the rate of eighteen miles an hour, was not explanatory of anything in which he was then engaged. It did not accompany the act from which the injuries in question arose. It was, in its essence, the mere narration of a past occurrence, not a part of the *res gestæ* — simply an assertion or representation, in the course of conversation, as to a matter not then pending, and in respect to which his authority as

engineer had been fully exerted. It is not to be deemed part of the *res gestæ*, simply because of the brief period intervening between the accident and the making of the declaration. The fact remains that the occurrence had ended when the declaration in question was made, and the engineer was not in the act of doing anything that could possibly affect it. If his declaration had been made the next day after the accident, it would scarcely be claimed that it was admissible evidence against the company. And yet the circumstance that it was made between ten and thirty minutes — an appreciable period of time — after the accident, cannot, upon principle, make this case an exception to the general rule. If the contrary view should be maintained, it would follow that the declarations of the engineer, if favorable to the company, would have been admissible in its behalf as part of the *res gestæ*, without calling him as a witness — a proposition that will find no support in the law of evidence. The cases have gone far enough in the admission of the subsequent declarations of agents as evidence against their principals. These views are fully sustained by adjudications in the highest courts of the States.[1]

We deem it unnecessary to notice other exceptions taken to the action of the court below.

This case was decided at the last term of this court, and Mr. Justice Woods concurred in the order of reversal upon the grounds herein stated.

For the errors indicated the judgment is

*Reversed, and the cause remanded for a new trial, and for further proceedings consistent with this opinion.*

---

[1] Note by the Court. *Luby* v. *Hudson River Railroad*, 17 N. Y. 131; *Pennsylvania Railroad* v. *Brooks*, 57 Penn. St. 339, 343; *Dietrick* v. *Baltimore &c. Railroad*, 58 Maryland, 347, 355; *Lane* v. *Bryant*, 9 Gray, 245; *S. C.* 69 Am. Dec. 282; *Chicago, Burlington &c. Railroad* v. *Riddle*, 60 Ill. 534; *Virginia & Tennessee Railroad* v. *Sayers*, 26 Gratt. 328, 351; *Chicago & N. W. Railroad* v. *Fillmore*, 57 Ill. 265; *Michigan Central Railroad* v. *Coleman*, 28 Mich. 440, 446; *Mobile & Montgomery Railroad* v. *Ashcraft*, 48 Ala. 15, 30; *Bellefontaine Railway* v. *Hunter*, 33 Ind. 335, 354; *Adams* v. *Hannibal & S. J. Railroad*, 74 Missouri, 553, 556; *S. C.* Am. & Eng. Railroad Cas. 416 and note; *Kansas & Pacific Railroad* v. *Pointer*, 9 Kansas, 620, 630; *Roberts* v. *Burks*, Litt. (Ky.) Select Cas. 411; *S. C.* 12 Am. Dec. 325; *Hawker* v. *Baltimore & Ohio Railroad*, 15 West Va. 628, 636. See also 1 Taylor, Ev., 7th Eng. Ed., § 602

. Dissenting Opinion: Waite, C.J., Miller, Field, Blatchford, JJ.

MR. JUSTICE FIELD, with whom concurred THE CHIEF JUSTICE, MR. JUSTICE MILLER, and MR. JUSTICE BLATCHFORD, dissenting.

I am not able to give my assent to the judgment of the court in this case.

The statement by the physician as to the condition of the injured party, the admission of which is held to have been error, was proved by his deposition to have been correct. Every material fact also which it contained was established by his independent testimony. It would not be in accordance with the usual action of men, in the ordinary concerns of life, to reject as incompetent evidence, a written statement thus made by a physician as to the condition of a patient under his charge, when it is subsequently proved by him to be true in all its details. And it should seem, that evidence upon which every one would act without hesitation in the common affairs of life, ought not to be excluded from consideration, except for clear reasons of policy, or long established rules to the contrary, when those affairs are brought into litigation before the courts.

If the recollection of the condition of the patient had passed from the mind of the physician, and he could still have testified that the statement made by him when the patient was under his charge was true, it would have been admissible. It is difficult, therefore, to find any just reason for excluding it, from the fact that, in corroboration of its truth, the physician also testified to the facts therein stated.

The admission of the declaration of the engineer, as to the rate of speed of the train at the time of the accident, was, in my judgment, admissible as part of the *res gestæ.* The rails and cross-ties of the road were in a bad condition. Some of the rails had been used for over forty years; and some of the cross-ties were decayed, and it appears that the accident was caused by a decayed cross-tie and a broken rail.

As the declaration was made between ten and thirty minutes after the accident, we may well conclude that it was made in sight of the wrecked train, and in presence of the injured parties, and whilst surrounded by excited passengers. The

engineer was the only person from whom the company could have learned of the exact speed of the train at the time; to him it would have been obliged to apply for information on that point. It would seem, therefore, that his declaration, as that of its agent or servant, should have been received. The modern doctrine has relaxed the ancient rule, that declarations, to be admissible as part of the *res gestœ*, must be strictly contemporaneous with the main transaction. It now allows evidence of them, when they appear to have been made under the immediate influence of the principal transaction, and are so connected with it as to characterize or explain it.

The case of the *Hanover Railroad Company* v. *Coyle*, 55 Penn. St. 396, 402, is in point. There it appeared that a peddler's wagon was struck by a locomotive and the peddler was injured; and the question was as to the admissibility of the declaration of the engineer that the train was behind time, to show carelessness and negligence. The Supreme Court of Pennsylvania held it admissible. "We cannot say," said the court, "that the declaration of the engineer was no part of the *res gestœ*. It was made at the time, in view of the goods strewn along the road by the breaking up of the boxes, and seems to have grown directly out of and immediately after the happening of the fact. The negligence complained of being that of the engineer himself, we cannot say that his declarations, made upon the spot, at the time, and in view of the effects of his conduct, are not evidence against the company as a part of the very transaction itself."

What time may elapse between the happening of the event in respect to which the declaration is made, and the time of the declaration, and yet the declaration be admissible, must depend upon the character of the transaction itself. An accident happening to a railway train, by which a car is wrecked, would naturally lead to a great deal of excitement among the passengers on the train, and the character and cause of the accident would be the subject of explanation for a considerable time afterwards by persons connected with the train. The admissibility of a declaration, in connection with evidence of the principal fact, as stated by Greenleaf, must be determined by

the judge according to the degree of its relation to that fact, and in the exercise of a sound discretion ; it being extremely difficult, if not impossible, to bring this class of cases within the limits of a more particular description. The principal points of attention are, he adds, whether the declaration was contemporaneous with the main fact, and so connected with it as to illustrate its character.

But, independently of this consideration, there is another answer to the objection taken to the admissibility of the declaration of the engineer. It was immaterial in any view of the case. The engagement of a railroad company is to carry its passengers safely ; and, for any injury arising from a defect in its road, or in the rails or ties, which could have been guarded against by the exercise of proper care, it is liable. Its liability does not depend upon the speed of the train, whether it was one mile or eighteen miles an hour. Though as a carrier of passengers it is not, like a carrier of property, an insurer against all accidents except those caused by the act of God or the public enemy, it is charged with the utmost care and skill in the performance of its duty ; and this implies not merely the utmost attention in respect to the movement of the cars, but also to the condition of the road, and of its ties, rails, and all other appliances essential to the safety of the train and passengers. For all injuries through negligence, to which the passenger does not contribute by his own acts, it is liable. So it matters not what the speed of the train was in the case at bar, nor what was the declaration of the engineer in that respect.

I am authorized to state that the Chief Justice, Mr. Justice Miller, and Mr. Justice Blatchford concur in this dissent.