# RUDD *v.* BUXTON.

---

ARREST OF JUDGMENT; PLEADING; EVIDENCE; LOST DOCUMENT, PROOF OF; WITNESSES.

1. The plaintiff is entitled, upon motion in arrest of judgment on a verdict in his favor, to every intendment of law that can be reasonably made; and every possible objection by the defendant will be presumed to have been made and overruled at the trial. (Following *Schwartz* v. *Reesch*, 2 App. D. C. 440.)

2. Unless a declaration fails in some form to state a cause of action (citing *Chandler & T. Co.* v. *Norwood*, 14 App. D. C. 357), defects and inaccuracies therein are not available in support of a motion in arrest of judgment rendered on a verdict in plaintiff's favor, no demurrer having been interposed.

3. An unsigned paper claimed to be a copy of a lost receipt, which was not executed in duplicate, is not admissible in evidence in favor of the author of the original, where it was not made with the knowledge and consent of the other party, it being only a self-serving memorandum made by the former.

4. No necessity for refreshing a witness's memory, which requires the admission of a purported copy of a lost instrument, which is incompetent as direct evidence, exists where the witness has a distinct recollection of the original, and states the substance thereof from an unrefreshed memory. (Citing *Gurley* v. *MacLennan*, 17 App. D. C. 170, and *Sechrist* v. *Atkinson*, 31 App D. C. 1.)

No. 2577.   Submitted December 4, 1913.   Decided January 5, 1914.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover damages for the alleged breach of certain guaranties.                                              *Affirmed.*

The COURT in the opinion stated the facts as follows:

The declaration of Edgar Buxton, plaintiff, alleged that defendant, Channing Rudd, by his written guaranties undertook

and promised plaintiff and his wife, Ada Buxton, that if they would subscribe to stock in a correspondence school corporation then about to be organized by defendant, he would guarantee to them the sums of $1,000, $1,000, and $1,500, respectively, with interest at 5 per cent per annum from the respective dates of said guaranties.

At the request of defendant, and in consideration of said guaranties, they paid to him the several sums aforesaid, respectively, on January 28, February 10, and July 7, 1904. That after plaintiff and his wife had become the holders of thirty-five shares of the capital stock of said corporation, to wit, on October 30, 1906, they were forced to surrender seventeen shares because the corporation was in such an insolvent condition that the same became necessary to prevent complete insolvency; said surrender being made at the request and upon the advice of defendant. Whereby plaintiff lost $1,000, with interest from January 28, 1904; and Ada Buxton lost $700, with interest from February 10, 1904. Ada Buxton has assigned her interest in said claim to plaintiff. Plaintiff claims $1,000 with interest at 5 per cent per annum from January 28, 1904, and $700, with same interest, from February 10, 1904.

The defendant pleaded the general issue.

Plaintiff testified that in 1903 he became assistant secretary and librarian of the Columbia University, employed under defendant, who was its secretary. Plaintiff and his wife, having some money to invest, consulted defendant, who advised them to wait and invest it in stock of the Intercontinental Correspondence University, which defendant expected to organize in a short time. Told them they would not be able to subscribe for the stock in their own names, because the founders were going to take all of the stock; but that the stock would have to be taken in the name of defendant, who would be glad to have them invest in this way, as it would be a help to him with the other founders. January 28, 1904, $1,000 were delivered to defendant in $100 bills, as he requested. Defendant executed a receipt which stated: "I have this day received of Edgar and Ada Buxton $1,000 to be invested in stock of the Intercontinen-

tal Correspondence University," and also: "I personally guarantee the principal and interest at 5 per cent on the above amount." At defendant's request they delivered to him on February 10, 1904, another sum of $1,000, for which he executed a similar receipt. Finally upon July 7, 1904, upon his request and the statement that it would be plaintiff's last chance to obtain any more stock, they gave him $1,500, for which he executed a like receipt.

The University was incorporated about the middle of July, 1904, defendant delivered to them thirty-five shares of the stock assigned in blank, with the request that the same should not be transferred on the books of the corporation without his knowledge and consent. That in February, 1905, the three receipts were obtained by defendant from plaintiff's wife, and destroyed by him, as he admitted to plaintiff. After learning that the receipts had been destroyed, he went with his wife to see defendant, asked why he had destroyed them, and that they be reproduced. Defendant said they were of no value, and that he would fulfill any promises that he had made just the same.

In 1906, defendant stated to the plaintiff and his wife that, owing to the financial condition of the corporation, all of the stockholders would have to surrender half of their stock; otherwise the corporation would fail. At defendant's request surrendered seventeen shares of the par value of $100 each, and signed a paper to that effect. This paper, signed by defendant, plaintiff and wife, and other shareholders, was a memorandum of agreement reciting that one C. M. Campbell had agreed to secure to the University $25,000 on a plan submitted by him, provided the shareholders would assign to him enough of their stock to make him the owner of 51 per cent of the capital stock of the corporation. It further recited that the board of trustees had ratified the said agreement.

The stock was surrendered to give Campbell a controlling interest; but no benefit has been received through said surrender of stock. At the time of said surrender, plaintiff and his wife demanded of defendant that he make good his promises, which he failed to do. Defendant expected to give all of his

time to the University. Plaintiff and wife were anxious to be employed by the University, and were so employed and engaged in different kinds of work by the University, and occupied an apartment in the University building.

Ada M. Buxton gave testimony similar to the plaintiff's in respect of the payments of money and the execution and contents of the several receipts therefor. In addition she testified that one evening in February, 1905, after plaintiff had gone to the law school, defendant asked her to come to his office, and asked her to let him see the three receipts. She returned to her apartment, got the receipts, and handed them to defendant, who looked at them and tore them up, saying when she remonstrated: "They are of no use, it is all right. They are not in the shape in which I want them." He assured her that he would make it all right, and would put them in different form, all in one paper; but the same has never been done.

In the cross-examination of both of the foregoing witnesses they were shown by defendant a paper purporting to be a copy of one of the three receipts (a paper described hereafter). They denied that it was a true copy.

Defendant testified that plaintiff had been closely associated with him in 1899, and knew that in 1904 he had no property save his income; had worked with him in conjunction with the three steps leading up to the University; which were the publishing and mailing of books throughout the world, the giving of instruction in self-culture through the Rolston University, and experiments in the National College of Oratory; and the incorporation of the Correspondence University.

Plaintiff knew who were the associates of defendant, desired to go into the University with him, and to give him $3,500 to be invested in its stock. It was invested in stock which was turned over to plaintiff. No stock was sold to the public; it was to be held by the founders. He gave plaintiff receipts for his money, of which he kept copies, it being his custom to keep copies of his correspondence. He had been able to find but one copy of a receipt. That a box of his papers had been lost, and he can find no other copy. That he had not obtained the receipts from

plaintiff's wife, and had not destroyed them; had not admitted to plaintiff that he had destroyed them. No guaranty was ever made by him to plaintiff; that no demand had ever been made of him, prior to the filing of the suit, for the payment of either principal or interest under the alleged guaranty.

He then offered in evidence a paper purporting to be a copy of the receipt given July 7, 1904. There was no signature attached. It is an ordinary receipt for $1,500, to be used for the purchase of stock in the Correspondence University, and contained no guaranty. This was objected to by the plaintiff. The court sustained the objection, and defendant excepted. Thereupon witness was asked if, by looking at the copy, he could state the language of the receipt. He said that he remembered the substance of the receipt, but not the exact words. The court sustained the objection to his using the copy, but ruled that he was entitled to give the substance of the receipt from memory. Defendant excepted. The defendant then testified to the substance of the receipt as follows: "It was a receipt for money received from them to be subsequently used to purchase stock in the Correspondence Institute, which was in process of formation at the time." There was no personal guaranty on his part as to the repayment of the money or the payment of the interest on it.

He then offered to prove that the copy had been contained in an envelop, which he produced, containing a copy of his letter of the same date resigning his position in the Columbian University, and the reply thereto. The court sustained an objection to this, and defendant excepted.

The case was submitted to the jury in a charge that was not excepted to, who returned a verdict for the plaintiff for the full amount of his demand, with interest.

Defendant moved in arrest of judgment on the ground that the declaration is "bad in law, there being no allegation of any sufficient contract of guaranty to support the action." The motion was denied, and judgment followed.

*Mr. Joseph W. Cox* and *Mr. J. T. Sherier* for the appellant.

.*Mr. John Ridout* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. The first error assigned relates to the denial of the motion in arrest of judgment.

Assuming, for the purposes of the argument, that the cause of action is defectively stated in the declaration, no exception was taken to it on that ground, and hence no opportunity offered for its amendment, had plaintiff been so advised. "Upon motion in arrest of judgment, the plaintiff is entitled to every intendment of law that can be reasonably made in support of the verdict. Everything that the defendant could object to will be presumed to have been made and urged at the trial, and it must be intended that they were overruled." *Schwartz* v. *Reesch,* 2 App. D. C. 440, 446.

It is only where no cause of action is stated at all that the defect is not cured. *Chandler & T. Co.* v. *Norwood,* 14 App. D. C. 357, 362. It is not necessary to determine whether the declaration stated a cause of action so defectively or inaccurately as to be subject to a demurrer, as none was presented. It is sufficient to say that it at least stated a cause of action in some form, and the objection in the form of a motion in arrest of judgment is not maintainable.

2. The remaining assignments of error have been argued together, as they all relate to the exclusion of the paper offered by defendant as a copy of the missing or destroyed receipt.

There was no error in refusing to let the paper be produced as evidence.

It is unnecessary to review the cases cited on behalf of the appellant; they are not applicable to the question as here presented. The receipt was not executed in duplicate, nor was a counterpart or copy made with the knowledge or consent of the plaintiff. In fact, both he and his wife, after having been shown the paper when testifying, denied that it was a true copy. It was nothing more than a self-serving memorandum made by

the defendant, whether prepared at or about the date of the original, or not.

Nor does it appear that it was needed to be used by the witness to refresh his memory, for he said that he had a distinct recollection of the contents of the paper, and proceeded to state the substance of the receipt from an unrefreshed memory. *Gurley* v. *MacLennan,* 17 App. D. C. 170, 179; *Sechrist* v. *Atkinson,* 31 App. D. C. 1, 5; *Vicksburg & M. R. Co.* v. *O'Brien,* 119 U. S. 99, 102, 30 L. ed. 299, 300, 7 Sup. Ct. Rep. 118. What has been said renders discussion of the third assignment unimportant.

The judgment is affirmed with costs.             *Affirmed.*

A petition for a rehearing was overruled February 2, 1914.