**UNITED STATES of America,**
**Appellee,**

v.

**Mack ADAMS, Appellant.**

**No. 104, Docket 31355.**

United States Court of Appeals
Second Circuit.

Argued Oct. 4, 1967.

Decided Oct. 30, 1967.

Leon Silverman, New York City (Allen Isaacson, New York City, of counsel), for appellant.

Paul B. Galvani, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, Otto G. Obermaier, Pierre N. Leval, Asst. U. S. Attys., of counsel), for appellee.

Before FRIENDLY, HAYS and ANDERSON, Circuit Judges.

FRIENDLY, Circuit Judge.

Mack Adams was convicted before Judge Bonsal and a jury in the District Court for the Southern District of New York for selling cocaine to a narcotics agent on June 16, 21, and 28, 1965, without a written order form in violation of 26 U.S.C. § 4705(a). Although the agents' testimony abundantly supported the verdict despite the innocent version of his meetings to which Adams testified, we are constrained to reverse because of the judge's allowing the jury to see incriminating writings by the agent making the purchase which had not been received in evidence.

At the end of the agent's testimony the Government offered three lock-seal envelopes in which he had delivered the purchased cocaine to the examining chemist. The front of the envelope contained a printed form filled out by the agent in handwriting;[1] the back bore a handwritten notation by the agent.[2] When defense counsel objected to what he characterized as "some self-serving written statements on the front of the envelope," the prosecutor responded, "We are not pressing the offer with respect to the writing other than the signature of the agent" on the back of the envelope. The court then said:

"That is what I imagine. I will receive them with appropriate instructions with regard to the writing of the agent."

After the jury had been deliberating for some time, the judge announced to counsel he had received the following message:

"Want to see exhibits of envelopes to determine writing thereon. All lock sealed envelopes and containers of narcotics."

Defense counsel recalled his objection to the writings and the receipt of the envelopes in evidence "with that writing

---

1. Thus, the front of Government's Exhibit 1, relating to the June 16 transaction, read as follows, the italicized portions having been written by the agent:

TREASURY DEPARTMENT
Bureau of Narcotics

District No. *2*       Case No. *NY:S 11992*
Name *Mack Adams, et al.*       Alias *Mac*
Address *New York, N. Y.*
Evidence *One (1) single glassine envelope containing a white powdered crystal substance suspected cocaine approximately 10.720 gms*
How obtained  Purchased by *Narcotics Agent Jack R. Peterson*
Where obtained  *Inside of 3816 Broadway, N. Y. C.*
Date *June 16, 1965*  Time  *8:45 P. M.*
Amount paid, *$350.00*
Witnesses: *Narcotic Agents Jack R. Peterson and John Frost*
Agent reporting case  *Jack R. Peterson*
Witnesses: *Dlvd to Chemist, 641 Washington St. NYC on June 17, 1965, by Agent Peterson.*

2. The back of Exhibit 1 read as follows:       Witnessed by JF
    Weighed & Sealed by:       on 6–17–65
      Jack R. Peterson, Agent
        on June 17, 1965.

off them in some way," and expressed the hope that they would not be exhibited to the jury. The Assistant United States Attorney countered that any objection was met "by the fact that he [the agent] testified to it on the stand." Observing that if the jury believed the agent's testimony, "there isn't any problem," and that "If they don't believe his testimony, they won't believe it because it is on the envelope," the judge announced he would send the envelopes to the jury. When defense counsel again reminded of the limited basis on which the envelopes had been received and objected that if the writing "is not in evidence now, the jury cannot look at it," the court replied, "if it isn't in evidence, it is now," and sent the exhibits to the jury room.

The Government has commendably called our attention to United States v. Ware, 247 F.2d 698 (7 Cir. 1957), and Sanchez v. United States, 293 F.2d 260 (8 Cir. 1961), in which the courts reversed convictions where similar envelopes were received in evidence over objection and were sent to the jury room. The holdings were that the writings were not admissible under the Business Records Act, 28 U.S.C. § 1732, or the Governments Records Act, 28 U.S.C. § 1733, and that even though they were merely cumulative of the agent's testimony, their receipt and particularly their transmission to the jury room were prejudicial since "[t]he jury thus had before it a neat condensation of the government's whole case against the defendant." 247 F.2d at 700.

We accept the Government's concession that the records did not qualify under 28 U.S.C. §§ 1732 or 1733 without foreclosing the issue if it should arise again. But we reject its attempt to distinguish the *Ware* and *Sanchez* decisions for failing to "consider the proper supporting ground—the identification of the narcotic exhibits and the proof of undisturbed custody." This confuses relevancy and competency. The writings were indeed relevant to the narrower issue now suggested as well as the broader one to which the jury doubtless applied them. But if they did not qualify as business or government records, the sole basis for receiving them would have been as past recollection recorded.[3] While in a proper case we might wish to consider the continuing vitality of the federal rule, heavily criticized by the text writers, see 3 Wigmore, Evidence § 738 (2 ed. 1940); McCormick, Evidence § 277 (1954), conditioning the admission of a record of past recollection on the absence of a present recollection, Vicksburg & Meridian R.R. v. O'Brien, 119 U.S. 99, 102, 7 S.Ct. 118, 30 L.Ed. 299 (1886),[4] we need not do so here. For in the present case the writings had never been received in evidence at all. True, it is hard to conceive that if they had been, defense counsel would have been able to weaken them either by cross-examining the agent or by showing a history of fabrication. But the principle that the jury may consider only matter that has been received in evidence is so fundamental that a breach of it should not be condoned if there is the slightest possi-

---

3. The writings were clearly not receivable as prior consistent statements. They were offered in the case in chief before any impeachment, 4 Wigmore, Evidence § 1124(1), and would have been equally incompetent after impeachment which here was solely by contradiction, *ibid.* § 1127.

4. At the time of the Supreme Court's decision, this rule had not yet become a subject of criticism; indeed, earlier decisions had held a record of past recollection inadmissible even when there was no present recollection, except under cer-

tain narrowly defined conditions. The Court made clear that it was endorsing what it took to be the more advanced view—"Applying, then, to the case the most liberal rule announced in any of the authorities, the ruling by which the plaintiffs were allowed to read the physician's written statement to the jury as evidence, in itself, of the facts therein recited, was erroneous." *Id.* at 102, 7 S. Ct. at 120. Rule 26 of the Rules of Criminal Procedure requires federal courts to interpret the rules of evidence "in the light of reason and experience."

bility that harm could have resulted. See Osborne v. United States, 351 F.2d 111, 113–119 (8 Cir. 1965); cf. Harrington v. Sharff, 305 F.2d 333, 337–338 (2 Cir. 1962). Even where the writings had been admitted, the *Ware* and *Sanchez* courts rejected the claim that any error in sending them to the jury was harmless since the agents had testified and were cross-examined on the same subjects. Compare United States v. Sherman, 171 F.2d 619, 621–622 (2 Cir. 1948), cert. denied, 337 U.S. 931, 69 S.Ct. 1484, 93 L.Ed.2d 1738 (1949).

■■ We comment briefly on Adams' two other claims of error since the points may arise on a new trial. The agent to whom Adams allegedly sold the cocaine testified about conversations concerning a possible transaction in heroin that never transpired. The Government claims this was proper within such recent decisions as United States v. Bozza, 365 F.2d 206, 214 (2 Cir. 1966) and United States v. Deaton, 381 F.2d 114 (2 Cir. 1967), since it gave the whole story of the agent's dealings with Adams. While these decisions rejected a wooden application of the "other crimes" rule, the Government should not press them too far. Far from being an essential part of the story of his dealings with Adams for cocaine, the agent's testimony as to the proposed heroin transaction had to be specially elicited from him after his recollection of the initial conversation had been temporarily exhausted; moreover there is a rather clear distinction between transactions that occurred, as in *Bozza* and *Deaton,* and one that did not. The evidential value of the latter is principally in showing the accused's state of mind; proof of this might better be deferred until the defense case makes it necessary to develop evidence of other crimes for that purpose. See United States v. Byrd, 352 F.2d 570, 575 (2 Cir. 1965). The other point concerns the Government's alleged failure to exert more effort to assist in locating the informer, whose name and local address defense counsel knew. Although we surely would not have re-versed on this ground since the informer was present only at the first of several meetings between the agent and Adams, we recommend that the Government make a reasonable examination of its recent files and utilize its contacts with state and local law enforcement officers for any data that might reveal the informer's present whereabouts.

The judgment is reversed and a new trial ordered.