Talmadge E. VAUGHN, Appellant,

v.

UNITED STATES, Appellee.

No. 9648.

District of Columbia Court of Appeals.

Argued June 24, 1976.

Decided Jan. 19, 1977.

Louis A. Kleiman, Washington, D. C., appointed by this court, for appellant.

Robert P. Palmer, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and William D. Pease, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, KERN and YEAGLEY, Associate Judges.

KERN, Associate Judge:

Appellant was charged with and convicted by a jury of possession of a narcotic drug.[1] The court sentenced him to one year in jail and ordered work release. In the instant appeal, we are urged to find reversible error in the trial court's failure to grant a mistrial after it was discovered that two items not admitted into evidence were transmitted by mistake to the jury room. While we view the failure of the trial court to maintain the sanctity of the jury room as error, we conclude that appellant was not prejudiced and affirm the conviction.

Appellant was arrested just after 4:30 a. m. on October 11, 1974 by Metropolitan Police Officer Thomas A. Johnson. The officer had earlier responded to a radio dispatch to investigate a tip called in to the police by a citizen. The officer proceeded to the address of the citizen and there spoke with a woman who told him that a young man named Edward possessed narcotics in his sock. She described Edward and his clothing and told the officer that Edward was riding a gray ten-speed bicycle toward a certain destination. The officer then proceeded in that same direction and saw appellant, who was on a bicycle and appeared to match the description given him by the young woman. The officer stopped appellant, who gave his name as Talmadge Edward Vaughn, and searched him. Hidden in one sock that appellant

1. D.C.Code 1973, § 33–402.

wore he found six small tinfoil packets containing a white powder, two small needles and a small syringe hose. When the officer put the tinfoil packets on the roof of his car, appeallant stated: "Oh, man, they ain't nothing but rip-off bags." In one of appellant's pockets the officer found a sealed opaque paper package which contained four large syringes not visible through the paper, but which was prominently marked with an outline of a syringe and the words "Disposable Syringes." On the suspicion that the packets contained illegally obtained drugs, appellant was arrested and charged in an information with violations of the Uniform Narcotics Act [2] and the Dangerous Drug Act.[3]

Three witnesses testified at the trial. A government chemist who received in a lock seal envelope the items found on appellant testified that the tinfoil packets contained usable quantities of heroin. After performing his analysis, the chemist testified, he put the items into another lock seal envelope for safekeeping until trial and attached to the envelope a report listing its contents. The chemist enumerated the items in his testimony: six tinfoil packets containing white powder, two needles, one syringe hose, and four syringes in a package. *No objection was made to this testimony.*

The officer who arrested appellant then testified recounting the circumstances surrounding the arrest. At the close of the government's case, the court admitted into evidence the two lock seal envelopes and the six tinfoil packets. The government presented no evidence that appllant knew he was carrying the tinfoil packets containing heroin, but chose to rely on the

jury drawing the inference that appellant was aware that he was carrying narcotics on his body.

Appellant did not deny that he was in fact carrying the tinfoil packets, but attempted to prove that he did not know he was carrying them. His sole witness at trial was his girl friend, Ms. Paula Struthers, who testified against the advice of her court-appointed counsel. She and appellant had argued at his house on the night of the arrest; she went to visit a girl friend, whose boy friend gave her the tinfoil packets later found on appellant, telling her they contained a "cutting" agent; [4] Ms. Struthers returned to appellant's house, found him asleep, and inserted the packets in his sock without his knowledge; and when he awoke and left she then called the police and told them appellant had narcotics on him.[5] Thus, according to Ms. Struthers, she planted the tinfoil packets of white powder on appellant as a harmless ploy to have him arrested and locked up until the police discovered the packets did not contain illegal or narcotic substances.

Ms. Struthers expressly denied that she saw or placed in appellant's sock the two needles and the syringe hose. In its rebuttal case, the government recalled the arresting officer who testified the two needles and a syringe hose were found in the same sock as the packets, and the needles and hose were then accepted into evidence as probative of appellant's knowledge he was carrying the items found in his sock. We understand the prosecution's theory to be simply that appellant was aware he was carrying six small tinfoil packets and several other items in his sock, because these items were bulky and their presence would not have escaped his attention.

2. D.C.Code 1973, § 33–402.

3. D.C.Code 1973, § 33–702. The government did not proceed on this count at trial and a nolle prosequi was entered just before closing arguments.

4. Ms. Struthers testified that a "cutting'" agent was a harmless substance used to dilute narcotics.

5. Ms. Struthers was presumably the informant the arresting officer spoke with, although he had earlier testified that he would not be able to identify the informant by appearance.

After deliberating for some five hours, the jury sent word to the court that it was "hopelessly hung." At this point, the court was also informed by the bailiff that the exhibits taken to the jury room mistakenly included the chemist's report attached to the second lock seal envelope, enumerating all the items found on appellant's person, and the unopened but clearly marked package of four syringes taken from appellant's pants pocket at arrest. The court then conducted a voir dire hearing of the bailiff and learned the following:

The bailiff had taken the exhibits into the jury room in the lock seal envelopes and, as the jury watched him, emptied the envelope containing all the evidence onto the table. The unopened package of syringes, which had not been introduced or admitted into evidence, fell out, as did the other properly admitted exhibits.[6] One of the jurors picked up the package of syringes and asked if it was part of the evidence. One of the jurors, perhaps the same one, referred to the package as "syringes." The bailiff replied that the package was not part of the evidence and was not to be considered and put the package back in one of the lock seal envelopes bearing appellant's name. The package had been exposed to the view of the jury for about thirty seconds. The bailiff left, and sometime later—the record does not disclose how much later—a marshal removed the envelope from the jury room.

After hearing this information, and after extended arguments by counsel, the court denied appellant's motion for a mistrial.

The court then charged the jury that it was to consider only evidence which had been properly admitted during trial, and that it was to disregard the package of syringes as not being admitted into evidence. The court further administered a modified "*Allen*" charge.[7] After further deliberations, the jury notified the court at 4:30 p.m. that they were still unable to reach a decision. The court decided at this point to let the jury go home and "sleep on it" before resuming deliberations. The following morning, the jury needed only about ten minutes to reach a guilty verdict. Judgment was entered accordingly and the instant appeal followed.

■■■ It was undoubtedly error that the package of syringes was permitted into the jury room, even if for a brief moment of time.[8] *United States v. Bishop*, 492 F.2d 1361 (8th Cir. 1974); *Dallago v. United States*, 138 U.S.App.D.C. 276, 427 F.2d 546 (1969); *Sawyer v. United States*, 112 U.S.App.D.C. 381, 303 F.2d 392, *cert. denied*, 371 U.S. 879, 83 S.Ct. 150, 9 L.Ed.2d 116 (1962). The transmittal of unauthorized objects into the jury room by inadvertence or mistake, however, has not been considered a constitutional error under either the Fifth or Sixth Amendments.[9] Therefore,

6. The chemist's report, which was a list of all the evidence he received from the police, was attached to one of the envelopes. As the envelope had been admitted without objection, the government argues that the report as well was properly admitted. However, there is some doubt as to whether counsel for the appellant knew that such a report was attached to the envelope.

7. *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). We note a matter not raised by either party: the charge given did not reflect the changes this court promulgated for such anti-deadlock charges in *Winters v. United States*, D.C.App., 317 A.2d 530 (1974) (en banc), but rather followed the older, disfavored test.

8. It was also error for the chemist's report, not admited into evidence, to be permitted into the jury room. *See* n. 6 *supra*. We find this error, however, to be nonprejudicial. The chemist had testified at trial what evidence he had received from the police. The report was merely a list of that evidence. We note that defense counsel did not object to that testimony. Thus, the list only confirmed in writing what the jury already heard in the chemist's testimony.

9. *See Quarles v. United States*, D.C.App., 349 A.2d 690, 692 (1975), *cert. denied*, 425 U.S. 972, 96 S.Ct. 2169, 48 L.Ed.2d 795 (1976), where this court held that transmittal of evidence to the jury room was a ministerial act of the court and thus a defendant had no

the proper standard for evaluating a claim of prejudicial error when an unauthorized object is inadvertently or mistakenly transmitted to the jury room is whether the judgment of the jury was "substantially swayed" by the presence of the unauthorized evidence in the jury room.[10]

Appellant argues that the jury's consideration of the package of syringes clearly created a serious possibility of prejudice in three ways. First, appellant argues that the package was demonstrative of a kind of criminality not associated with the offense charged, namely possession of implements of crime; secondly, that the jury could have easily convicted him of the narcotics charge based on his possession of certain drug-related paraphernalia since the jury could arguably infer that anyone in possession of such paraphernalia would be in possession of narcotics as well; and thirdly, that the unadmitted evidence was suggestive and irrelevant and would not have been admissible because its prejudicial effect outweighed its probative value.

Standing alone in a narcotics possession case, the presence of a package of syringes could raise a sinister inference in the minds of the jury that in all likelihood a defendant was using or selling a narcotic substance. Thus, if this item had been the *only* evidence in this case, in addition to the tinfoil packets of heroin, it is conceivable that the jury's judgment could have been substantially swayed by this evidence indicating appellant's "status" as a drug user or seller. We would be confronted with a jury's guilty verdict based on unadmitted evidence that was prejudicial. However, the prejudicial character of the package of syringes was neutralized by the fact that the government had proffered, and the court had accepted into evidence, the two needles and a syringe hose found in appellant's sock at the time of his arrest. We conclude that even in the context of this trial for the possession of a narcotic drug the jury could infer no more prejudicial inferences from the unadmitted and inadvertently viewed package of syringes than the properly admitted and viewed needles and syringe hose.[11]

Appellant's contention that the unopened package of syringes was so "explosively suggestive" and irrelevant that it would have been prejudicial and totally inadmissible fails for the same reason. The prejudicial effect of the package of syringes is no greater than the exposure to the jury of the needles and syringe hose found in appellant's sock. Although the transmittal into the jury room of the former item was undoubtedly error, we fail to find that the jury's limited view of this unadmitted evidence was so prejudicial to the appellant's case that its judgment was substantially swayed.

Appellant relies heavily upon *Dallago v. United States, supra,* in urging reversal, but we think the facts of that case are significantly different from those before us. *Dallago* involved a six-week trial on complicated issues of alleged criminal violations of the federal securities laws in which a large amount of documentary evidence was introduced. Indeed, so much material was produced that the jury apparently appointed a "secretary" from among its members to keep track of the documents —which included portions of substantial

---

Fifth Amendment right to be present at that time. *See also Dallago v. United States, supra* at 283, 427 F.2d at 553, where the court rejected defendant's claim that transmittal of evidence to the jury was a critical stage of the criminal proceeding; therefore defendant had no Sixth Amendment right to have counsel present.

10. *Quarles v. United States, supra* at 692; *Dallago v. United States, supra* at 290, 427 F.2d at 560.

11. Appellant was not charged with possession of implements of crime although he was carrying the two needles and hose in his sock and the unopened package of syringes in his pocket. We therefore need not face the problem that appellant suggests that the jury may have associated the criminality of the possession of implements of crime offense with the different narcotics offense with which appellant was in fact charged and tried.

filings with the Securities and Exchange Commission. The unauthorized exhibit which inadvertently found its way into the jury room was an SEC order suspending trading in the stock of a company of which a defendant was the principal owner. The suspension was based on the Commission's finding of misrepresentation and material omissions in that company's registration statements. Since the defendant was being tried for related criminal violations of the securities laws the federal circuit court could not overlook the possibility that the jury had considered the highly prejudicial conclusory statement by the SEC in determining the guilt of the defendant.

The substantial possibility of prejudicial harm found in *Dallago* is not present here. The trial in the instant appeal had a limited number of witnesses, was based upon an uncomplicated set of facts and presented clear issues of fact and, particularly, credibility for the jury to decide. The sole issue before the jury was whether appellant knew he possessed the heroin concededly found in his sock. The needles and syringe hose found in appellant's sock and his statement made at the moment of arrest strongly suggested that appellant must have known he was carrying objects in his sock, and also served to rebut the only testimony offered by the defense, that of Ms. Struthers, who denied seeing or placing in the sock the needles and syringe hose.

■ We have noted that in cases where an item of evidence not admitted at trial is transmitted to the jury room through inadvertence or mistake, the appropriate standard of review in determining whether reversal is required is whether the jury's judgment was substantially swayed by the admission into the jury room of the unauthorized evidence. A different standard of review was announced in United States v. Adams, 385 F.2d 548 (2d Cir. 1967), where a trial judge *permitted* unadmitted evidence to be considered by the jury. The appellate court held "[t]he principle that the jury may consider only matter that has

been received in evidence is so fundamental that a breach of it should not be condoned *if there is the slightest possibility that harm could have resulted.*" *Id.* at 550–51 (emphasis added). Since this very language was quoted with approval in both *Dallago v. United States, supra* at 290, 427 F.2d at 560, and *Quarles v. United States,* D.C.App., 349 A.2d 690, 692 (1975), *cert. denied,* 425 U.S. 972, 96 S.Ct. 2169, 48 L. Ed.2d 795 (1976) it might appear that two different and superficially inconsistent standards for review were being embraced, *viz.,* whether there was the *slightest* possibility that harm could have resulted or whether the jury was *substantially swayed* by the improper viewing. However, in *Adams* the jury apparently requested the unadmitted evidence and it was received by the jurors in the jury room with the approval of the trial judge and over the strenuous objection of defense counsel. Where unadmitted evidence is transmitted to the jury by a mistaken ruling of the trial court over the objection of trial counsel, we deem that error to be so fundamental that it would require reversal if there is the "slightest possibility that harm could have resulted." *United States v. Adams, supra* at 550–51. In *Adams,* we note this error to have been particularly prejudicial because the unadmitted evidence was a written summary of the government's case. In *Quarles, Dallago,* and the present case, the jury's viewing of unadmitted evidence was through inadvertence rather than by an erroneous ruling of the trial court. We therefore conclude that such a rigorous standard of review as applied in the *Adams* case is not necessary where the inadvertent mistake is discovered in the trial court and a curative instruction is promptly given.

■ The standard of our review, as stated above, is whether the jury was substantially swayed by the inadvertent transmittal of unadmitted evidence to the jury. We are satisfied here that the jury was not and hence the judgment must be and is

*Affirmed.*