Michael EDWARDS, Appellant,

v.

UNITED STATES, Appellee.

No. 97–CO–458.

District of Columbia Court of Appeals.

Argued Oct. 5, 2001.

Decided Oct. 10, 2001.*

John T. Moran, Washington, DC, appointed by the court, for appellant.

Maria N. Lerner, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time the brief was filed, and John R. Fisher, Mary–Patrice Brown and Robert D. Okun, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY, REID and WASHINGTON, Associate Judges.

REID, Associate Judge.

In this case, after his conviction of voluntary manslaughter and other crimes, appellant Michael Edwards filed a Corrected Motion for a New Trial and Motion For Leave to Contact Jurors, following his determination that two photographic exhibits of the victim, which had not been admitted into evidence during his trial, allegedly were sent to the jury room. The trial court denied his motion. We affirm.

## PROCEDURAL AND FACTUAL HISTORY

On April 7, 1995, Mr. Edwards was convicted of offenses in connection with the death of A.W. Jackson, Jr. and the shooting of William Long. On July 13, 1995, he noted an appeal of his conviction to this court, which we affirmed on November 30, 1998. *Edwards v. United States*, 721 A.2d 938 (D.C.1998).[1] On July 12, 1996, during the pendency of his appeal, Mr. Edwards

---

* The decision in this case was originally released as a Memorandum Opinion and Judgment on October 10, 2001. It is now being published by direction of the court.

1. The facts presented at trial are set forth in *Edwards, supra*. Mr. Edwards' direct appeal was deconsolidated from this appeal.

filed a Motion for Leave to Contact Jurors and a Motion for a New Trial with the trial court, asserting that he believed that the jury had seen and considered two exhibits that had been excluded by the trial judge and that the photographs had substantially swayed the jury.[2]

On November 14, 1996, the trial court held an evidentiary hearing on the matter. The government called three witnesses who were present during trial: Patricia Haynes, the prosecutor; Clark Fleckinger II, defense counsel; and Harold Smith, the courtroom clerk. Ms. Haynes testified that, as a matter of general practice, she gathers together all of the exhibits that were introduced at trial, places them in order and invites defense counsel to confirm that the correct exhibits were sent to the jury. Ms. Haynes said that she specifically remembered going through the exhibits in Mr. Edwards' case and assumed that Mr. Fleckinger was with her at the time, because it would have been very unusual for defense counsel to abstain from this process. She also testified that after a verdict is returned, she generally carries the small exhibits back to her office and has the local crime officer carry the larger exhibits back. She concluded that the jury did not see the exhibits because the photos were not included with the other exhibits she recovered after jury deliberations. Ms. Haynes also reported that she could not locate Exhibit 5 but that she

did not generally preserve exhibits excluded from trial. Mr. Fleckinger testified that he vaguely recalled going through the exhibits with Ms. Haynes but remembered very little about the process. Mr. Smith testified that he had no recollection of what was or was not admitted. He indicated that there was another mistake on the exhibit summary. Exhibit 7 had not been entered into evidence, though the summary of exhibits admitted indicated that it had been.

The trial judge initially found that, based upon the prosecutor's practice, Exhibit 5 did not go to the jury; however, she could not "say with absolute certainty that [Exhibit 34] did not go back," but even assuming that both documents had gone to the jury, they did not substantially sway the jury to convict Mr. Edwards. Nonetheless, after hearing testimony and reviewing additional pleadings from the parties, the judge determined that neither exhibit was given to the jury. Furthermore, the trial judge focused on the potential impact of Exhibit 34, assuming that it had gone to the jury, and found that the jury had already heard the gruesome details of the decedent's death, and added that she could "state with confidence that if the photograph had been admitted into evidence, it would not have inflamed the jury to convict [Mr. Edwards] of crimes for which he otherwise would have been acquitted."[3]

---

2. The exhibits in question were denoted Government's exhibits 5 and 34.

   According to the trial court's Order, exhibit 5 is "an over-sized color photograph depicting the decedent sitting on the floor with his torso leaning against his left leg. His face is not visible, and his left hand appears to have blood on it. Also visible in the photograph are a bed with a sheet on it and a plastic bag containing a soda bottle on the floor by the decedent's legs."

   Exhibit 34 is a smaller exhibit, "a close-up color photograph of the bullet wound above

decedent's right eyebrow with stippling around the wound. The photograph, which is considered an autopsy photograph, was taken at the morgue and does not depict any blood. It shows most of decedent's face with his eyes closed."

3. The trial judge found that Exhibit 5 was "fairly innocuous and cumulative of other evidence ... [thus] not prejudicial."

## ANALYSIS

Mr. Edwards argues that: (1) there is neither a preponderance of the evidence, nor clear and convincing evidence showing that the exhibits in question were not submitted to the jury, and (2) where there is the slightest possibility that harm could have resulted from the error of allowing the exhibits into the jury room, as in his case, a new trial is required. We need not reach Mr. Edwards' first argument because we can say with fair assurance that, even assuming Exhibits 5 and 34 reached the jury room, they did not substantially sway the jury's verdict. *See Dallago v. United States*, 138 U.S.App. D.C. 276, 427 F.2d 546 (1969); *Vaughn v. United States*, 367 A.2d 1291, 1296 (D.C.1977).

In *Dallago, supra*, the court concluded that not only was it error to allow unauthorized documents in the jury room, but that the error "[was] of such magnitude and consequence as to mandate the award of a new trial," because it was unable to " 'say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error. . . .' " 138 U.S.App. D.C. at 290, 427 F.2d at 560 (quoting *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). The *Dallago* court also referenced a Second Circuit opinion, *United States v. Adams*, 385 F.2d 548 (2d Cir.1967), which stated: "The principle that the jury may consider only matter that has been received in evidence is so fundamental that a breach of it should not be condoned if there is the slightest possibility that harm could have resulted." *Id.* at 550–51. Mr. Edwards maintains that

this court should apply the principle articulated in *Adams, supra*.

We considered *Dallago* and *Adams* in *Vaughn, supra*. We determined that: "in *Adams* the jury apparently requested the unadmitted evidence and it was received by the jurors in the jury room with the approval of the trial judge and over the strenuous objection of defense counsel." *Vaughn, supra*, 367 A.2d at 1296. One document consisted of "a written summary of the government's case," and hence, was "particularly prejudicial." *Id.* A similar conclusion was reached in *Dallago, supra*, a case brought under the Securities Act of 1933 and the Securities Exchange Act of 1934, where an exhibit containing files of the Securities and Exchange Commission, including an order suspending the exemption from certain registration requirements of the Securities Act of 1933 of one of the company's controlled by the appellant, was erroneously sent to the jury room.[4] The court held that the error in permitting the suspension order to go to the jury room "[was] of such magnitude and consequence as to mandate the award of a new trial." *Id.* at 290, 427 F.2d at 560 (quoting *Kotteakos, supra*).

In contrast to *Adams* and *Dallago, supra*, in *Vaughn*, a chemist's report and an unopened package of syringes were erroneously taken into the jury room. We noted that the error relating to the chemist's report was "nonprejudicial" because it "only confirmed in writing what the jury already heard in the chemist's testimony." *Id.* at 1294 n. 8. In addition, we applied the *Dallago* standard, based on *Kotteakos, supra*, to the unopened package of syringes and concluded that the error in admitting

---

4. The suspension order in question not only described one of the company's reports as "misleading," but "[t]he concluding paragraph stated that [a transaction] was made in violation of Section 17(a) of the Securities Act of 1933, which contains the general prohibition against fraudulent interstate transactions." *Id.* at 285, 427 F.2d at 555 (footnote omitted).

the package "was [not] so prejudicial to the appellant's case that [the jury's] judgment was substantially swayed." *Id.* at 1295.

*Vaughn, supra,* and *Parker v. United States,* 601 A.2d 45 (D.C.1991) control the outcome of Mr. Edwards' case, with respect to the issue of prejudice. First, the photographs were cumulative of other evidence presented to jury, including detailed testimony from the medical examiner about the bullet's path of travel through the decedent's head and the autopsy report. As the trial court stated: "[T]he jury already heard gruesome evidence of the decedent's death, and no new, extrajudicial facts were presented to the jury by government exhibit 34." As we said in *Parker, supra,* where the exhibit "was cumulative of other testimony at trial, the improperly admitted evidence could not have 'substantially swayed' the jury." *Id.* at 53 (quoting *Vaughn, supra,* 367 A.2d at 1295). Here, the trial court specifically found that: "Exhibit 5 was fairly innocuous and cumulative of other evidence."

Second, the photographs were consistent with Mr. Edwards' defense. Mr. Edwards self-defense argument left the jury with the sole issue of determining his intent at the time of the shooting. We agree with the trial court's conclusion that the jury credited Mr. Edwards' self-defense claim, as manifested by the acquittal of his first- and second-degree murder charges. As the trial court determined, it is apparent that "the jury *credited* defendant's testimony that he believed he needed to act in self-defense, but found his belief unreasonable under the circumstances." (Emphasis in original). Consequently, even assuming that both Exhibit 5 and Exhibit 34 went to the jury, they did not influence the jury to return a conviction on the charged count of armed first-degree murder. Rather, the jury convicted Mr. Edwards of the lesser-included offense of voluntary manslaughter while armed.

Furthermore, the evidence against Mr. Edwards for the voluntary manslaughter while armed charge was strong. At trial, the government presented a post-arrest videotaped confession where Mr. Edwards claimed that he was acting in self-defense. The government then called two witnesses, the complaining witness and his daughter, who each testified that Mr. Edwards fired his gun at the decedent. Mr. Edwards, in arguing self-defense, himself testified that he shot the decedent, believing he was reaching for a weapon. Thus, even assuming that the exhibits were sent to the jury in error, we can "say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the [jury's] judgment was [not] substantially swayed by [their admission into the jury room.]" *Kotteakos, supra,* 328 U.S. at 765, 66 S.Ct. 1239; *Vaughn, supra,* 367 A.2d at 1295.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*